In re **FRANK B. HALL & CO., INC.,**
**Securities Litigation.**

No. 86 Civ. 2698 (CLB).

United States District Court,
S.D. New York.

Aug. 1, 1988.

---

Sol Schreiber, Edward Labaton, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, David H. Weinstein, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for plaintiff.

Joshua Rabinowitz, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants all except Touche Ross.

Mark Davidson, Harold Langsam, Richard Goldstein, Shea & Gould, New York City, for defendant Touche Ross.

### MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

By motion argued on March 16, 1988 and fully submitted on July 2, defendant Touche Ross, and Co. ("Touche Ross"), a certified public accounting firm, renews its motions to dismiss the second amended complaint ("the complaint") in this class action arising under §§ 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t, Rule 10b–5 of the Securities and Exchange Commission ("SEC") promulgated thereunder, and New York common law [1]. Touche Ross moves under Rule 9(b), Fed.R.Civ.P., alleging that fraud has not been pleaded with sufficient particularity, and under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim, and relies on the consequent lack of pendent subject

---

1. Plaintiffs' second claim alleges common law fraud against all defendants; the third claim, for negligent misrepresentation, is not directed toward defendant Touche Ross.

matter jurisdiction to warrant dismissal of the state law claim if either motion disposes of the federal claim.

On January 29, 1987, all defendants [2] moved for the same relief sought herein. Those motions were denied as to all except Touche Ross. Upon the Court's suggestion, it was agreed at the January, 1987 hearing that Touche Ross would withdraw its motion, with leave to renew after it submitted to limited discovery. For the reasons discussed within, the renewed motion by Touche Ross now is denied.

■ While some familiarity of the reader with the substantial record in this case must be assumed, facts necessary to place the Court's ruling in its proper context will be provided, viewed in the light most favorable to the plaintiff class. *Dahlberg v. Becker,* 748 F.2d 85 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

Plaintiffs' claims arise from various statements publicly disseminated from March 26, 1985 to March 31, 1986 ("the class period") by the directors of Frank B. Hall & Co., Inc. ("Hall"), relating to and affecting the finances of that publicly held company. The class members allege that all defendants made, or assisted in the making of, material misrepresentations and omissions concerning two Hall insurance subsidiaries, Global Surplus Insurance Services, Inc. ("Global"), and the Union Indemnity Insurance Company of New York ("Union"), which polluted the market and induced plaintiffs to purchase the common stock of Hall during the class period at an inflated price, to their financial detriment.

Plaintiffs claim that these misrepresentations or omissions appeared in, or were fraudulently or recklessly omitted from, Hall's 1984 annual report and Form 10–K, issued on or about March 26, 1985, ("the 1984 report"), Hall's 1985 Forms 10–Q, filed quarterly ("the quarterly reports"), and various press releases issued by the Hall directors. Defendant Touche Ross issued an unqualified opinion on the 1984 report, but only reviewed the subsequent quarterly reports. The class members' essential contention against Touche Ross is that the facts about Global and Union that ultimately were disclosed in Hall's 1985 annual report and Form 10–K, filed on or about April 1, 1986, should have been mentioned in the 1984 report. Plaintiffs argue for Touche Ross's liability solely on the basis of the 1984 report; the other statements are offered only against other defendants.

In proposing the rather unusual compromise agreed to at the January, 1987 conference, this Court was motivated by a recognition of the *de facto* enhanced pleading requirement that has developed under Rule 9(b), Fed.R.Civ.P. for outside professionals, such as lawyers and accountants, in fraud actions, particularly those under the federal securities laws. *See, Transcript of hearing held January 29, 1987* ("Jan. '87 trans."), pp. 66–67; *Luce v. Edelstein,* 802 F.2d 49 (2d Cir.1986); *see also, Frymire v. Peat, Marwick, Mitchell, & Co.,* 657 F.Supp. 889, 894 (N.D.Ill.1987). In an effort to advance the sound policy concerns underlying this standard, and to protect Touche Ross from burdensome and possibly unwarranted discovery demands, we proposed, and the parties agreed, that Touche Ross should submit to discovery involving only production and explication of its work papers for the 1984 Hall audit. Such discovery is now completed, and Touche Ross renews its motions.

■ Dismissal under Rule 12(b)(6), Fed.R.Civ.P. is appropriate only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed. 80 (1957). We find the complaint is sufficient on its face under this standard. *See, Jan '87 trans.,* pp. 56–66. In order to satisfy the more stringent requirements of Rule 9(b), Fed.R. Civ.P., in this context, however, the complaint also must allege (1) specific facts showing fraud, (2) sources that support the

**2.** The defendants are Frank B. Hall & Co., Inc. and fourteen of its officers or directors; Global Surplus Insurance Services, Inc. and three of its officers or directors; and Touche Ross.

alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn. *Schwartz v. Novo Industri, A/S,* 635 F.Supp. 1463, 1465 (S.D.N.Y.1986), *citing, Crystal v. Foy,* 562 F.Supp. 422, 425 (S.D.N.Y.1983); *see also, Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–59 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *In re Union Carbide Corp. Consumer Prod. Business Securities Litigation,* 666 F.Supp. 547 (S.D.N.Y.1987).

█ We realize that it is not the Court's function on a pleading motion "to weigh the evidence that might be produced at a trial[,] but merely to determine whether the complaint is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985). We will, however, in considering the motion of Touche Ross under Rule 9(b), Fed.R.Civ.P., evaluate the sufficiency under that rule of the specific facts disclosed during the limited discovery of Touche Ross, and the reasonable inferences arising therefrom, as if they were well pleaded in the complaint. Accordingly, for purposes of this motion, plaintiffs' complaint is deemed amended to include the facts and inferences fairly appearing from discovery, consistent with the ensuing discussion, and to incorporate by reference all documents and testimony produced by Touche Ross. In light of such amendment, the complaint is sufficient to comply with Rule 9(b), Fed. R.Civ.P.[3]

*Global*

█ Global was involved in a "fronting arrangement" with the Protective National Insurance Company of Omaha ("Protective"), under which Global exploited Protective's status as an insurer licensed to underwrite risks in California and certain other states. The arrangement, which allowed Global effectively to conduct business in states where it was not licensed, appears to be lawful, at least this is assumed. Front-

ing is commonly employed in the insurance industry. Under the terms of the fronting agreement, Protective was to retain 5% of the risks undertaken, and obtain reinsurance for the remaining 95%. Plaintiffs assert that Hall was bound by a guaranty of Protective for liabilities arising from the fronting arrangement, which was signed by Hall's National Director of Excess and Surplus Lines. *See, Jan. '87 trans.,* pp. 12–18, 42. Defendants do not deny the existence of such a document, but dispute whether it constituted a binding guaranty of Protective by Hall.

Plaintiffs contend that Touche Ross should have ascertained, and its 1984 report should have disclosed, this potential liability of Hall for the obligations of Global and its reinsurers. Instead, the report disclosed only Hall's liability on certain loans extended to Global, in the following language:

"Global, a subsidiary of the Company, is managing general agent for Protective [ ] for a discontinued insurance program (the "Program") under agreements which require Global to handle and pay claims even prior to receiving funds from Protective's reinsurers. Losses in the Program have exceeded premiums and as of December 31, 1984, Global has borrowed approximately $11.5 million from Protective and approximately $3 million from [Hall] to pay claims. Global expects to pay future claims and to repay these borrowings with funds received in due course from Protective's reinsurers, pursuant to their reinsurance obligations.

"Repayment of substantially all the amounts lent to Global by Protective are guaranteed by [Hall]. [Hall] is also obligated on approximately $10 million of letters of credit obtained for Protective to meet regulatory requirements which apply to Protective. [Hall] expects Protective's reinsurers to fulfill their obli-

---

**3.** Because we deem the complaint amended as stated in the text, the Court shall, in the exercise of its discretion and pursuant to its understanding with all counsel, continue to treat the subject motions as directed to the face of the

complaint. *See, Goldman v. Belden, supra,* 754 F.2d at 1065–66 ("pleading is deemed to include any document attached to it as an exhibit ... or any document incorporated in it by reference").

gations to provide substitute letters of credit.

"There can be no assurances that reinsurers will pay all required amounts or that their payments will be made on a timely basis so that further advances to Global will not be necessary.

"Management of [Hall] believes that this situation will not have a material adverse effect on the consolidated financial position or results of operations of the Company."

*Affidavit of defense counsel William Hammer,* (October 29, 1986), Exh. B, p. 26.

Plaintiffs claim this language was misleading, (1) because it omitted, and implicitly denied, the existence of the alleged obligation to Protective by Hall for the obligations of Global and the reinsurers arising from the fronting arrangement, and (2) because it failed to disclose known, substantial difficulties then being experienced concerning the collectability of funds due from the reinsurers. Whether or not Touche Ross knew, or should have known, at the time of the 1984 Hall audit that Hall's relationship with Global and/or Protective would have a material adverse effect on the consolidated financial position or results of operations of the Company is a disputed issue of fact for trial.

The scope of Hall's potential liability under the Global program and Hall's relationship with Protective was acknowledged grudgingly by the Hall directors over time. Although it contested any claim of liability to Protective under the alleged guaranty, Hall increased its reserves for obligations arising from the Global/Protective program from $1 million dollars in the 1984 report to $20 million in the Form 10–Q filed for the third quarter of 1985, to $64 million, with an estimate of $100 million possible exposure, in the 1985 report and Form 10–K, filed on or about April 1, 1986. Plaintiffs contend that the enormity of this increase in reserves in the span of a single year, along with the related failure to advise that inadequate reserves were established in 1984, and the failure to report the collection difficulties with certain reinsurers, would allow a reasonable juror to infer

that all defendants, including Touche Ross, knew that the 1984 report was false, or recklessly disregarded material facts indicating its falsity, at the time it was issued.

Viewed in context, the lack of disclosure in the 1984 report concerning collection difficulties with the reinsurers may permit an inference of recklessness by Touche Ross. A Touche Ross inter-office memo by Robert Bass, dated March 15, 1985, before the 1984 Hall report was issued, reads "certain reinsurers (dollars involved not quantified at this time but not believed to be material) are denying coverage." *Affidavit of plaintiffs' counsel Jeanne Wrobleski,* (January 27, 1988), Exh. U. Touche Ross's failure to determine the scope of potential losses from this situation, or to set forth the reasons for the refusal of the reinsurers to pay and the reasons for its conclusion that such amounts were not material, could fairly support an inference establishing § 10(b) liability.

We also find plaintiffs' action supported for current purposes by the rapid rise in reserves for the Global/Protective program, and the 1984 report's failure to disclose Hall's potential liability under the alleged Protective guaranty. The reserve argument, which partakes of the nature of a *res ipsa* claim alleging fraud instead of negligence, is not suitable to pre-trial adjudication. The allegations of the complaint, Hall's establishment of a $64 million reserve for potential liabilities under the alleged guaranty, and the subsequent, confidential settlement of such claims with Protective, effected through the Nebraska regulators, all suggest that the asserted fraud has been pleaded sufficiently for current purposes. *See, e.g., The Ltd., Inc. v. McCrory Group,* 683 F.Supp. 387 (S.D.N.Y. 1988); *Reliance Insurance Co. v. Eisner & Lubin,* 685 F.Supp. 449 (D.N.J.1988).

Accounting industry standards as codified by the Financial Standards Accounting Board ("FASB") require that an auditor disclose any loss contingency of which "there is at least a reasonable possibility" of assertion, *FASB Opinion # 5,* ¶ 11, and even those contingencies where "the possibility of loss may be remote", if such possi-

ble claims would be premised on a guaranty. *Id.*, ¶ 12. While these procedures are not mandatory, Touche Ross's failure to observe them may be treated by a jury as some evidence of fraud or reckless disregard. The difference between negligence and gross negligence is not sufficiently clear under these facts to justify disposition of the issue short of a plenary trial.

*Union*

Hall carried Union, a discontinued insurance subsidiary, at a value of $10 million dollars in its 1984 report, despite the fact that Union had declared itself insolvent as of December 31, 1984 in its own 1984 annual report filed several months earlier. In July, 1985, the Superintendent of Insurance of the State of New York ("the Superintendent") liquidated and dissolved Union, and in December of 1985, the New York State Department of Insurance ("DOI") informed the Hall directors that it considered Union's insolvency to be a result of possible malfeasance on the part of Hall's management controlling Union. On March 6, 1987, the DOI filed a complaint against Hall, Union, Union's former directors and officers, and Touche Ross as a result of Union's failure, which is pending in New York State Supreme Court. *See, Affidavit of plaintiff's counsel Jeanne Wrobleski,* (January 27, 1988), Exh. J.

Plaintiffs allege that the facts underlying the DOI report, and the subsequent actions taken against Union, were known, or should have been known, by Touche Ross when it conducted the 1984 audit, and that the omission of these facts made Hall's 1984 statement misleading. Plaintiffs further allege (1) that Touche Ross should have learned of Union's insolvency from reading an independent, pre-acquisition review of Union conducted in the early summer of 1984 by the accounting firm Deloitte, Haskins and Sells ("DH & S"), (2) that Touche Ross would have arrived at the same conclusion as DH & S did concerning Union's value, had Touche Ross not been recklessly blind to Union's true financial condition while conducting the 1984 Hall audit, and (3) that Touche Ross should have known, and disclosed, that Hall could be

liable for all the debts of Union under a "piercing of the corporate veil" theory, based on interlocking directors between the parent and subsidiary corporations and the absence of directors' meetings for Union since May of 1983.

Touche Ross moots much of the factual argument by conceding that it was aware of Union's insolvency at the time of the 1984 audit, but argues that it was under no obligation to disclose Union's insolvency, or Hall's possible liability for Union's debts under a theory of "piercing the corporate veil", in the 1984 statement.

The portion of the claim against Touche Ross presents disputed issues of fact as well as significant issues of law, which should be resolved by a plenary trial. As discussed *supra* at pp. 1464–65, an auditor generally is not obliged to disclose contingent claims unless it is reasonably likely that they will be asserted. *FASB Opinion #5* ¶ 11. The "piercing" theory here presented, if applied to the facts presently known to the Court, probably does not represent settled law. *See, e.g., England Strohl/Denigris, Inc. v. Weiner,* 538 F.Supp. 612 (S.D.N.Y.1982), *aff'd,* 740 F.2d 954 (2d Cir.1984); *Walkovszky v. Carlton,* 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966) (high standard for piercing the corporate veil under New York state law). However, there is fair ground for litigation on this point.

Plaintiffs may fare better with their allegation that Touche Ross was reckless or fraudulent in valuing Union at $10 million under Generally Accepted Accounting Principles ("GAAP") in the 1984 report. The proper standard for assigning a value to a discontinued operation under GAAP is set forth in Opinion Number 30 of the Accounting Principles Board ("*APB #30*"), which provides that "[t]he determination of whether a gain or loss results from the disposal of a segment of a business should be made at the measurement date based on estimates at that date of the net realizable value of the segment." *Id.* ¶ 15.

In allowing for an estimate of receivables from unlicensed out of state insurers, GAAP is less demanding than Statutory Accounting Principles ("SAP"), under

which DH & S reviewed Union. SAP requires that letters of credit be obtained in the amount of all receivables from insurers not licensed in the state. Pursuant to that standard, DH & S discounted completely over $12 million in out of state receivables for which letters of credit could not be located, while Touche Ross accepted such receivables as assets under GAAP based on (1) unspecified inquiries to the debtors and (2) the representations of Hall officers.

That evaluations done under different accounting standards should yield different results is not surprising, and no inference of fraud or gross negligence may fairly be drawn from that fact, standing alone. However, while GAAP is less stringent than SAP in its requirements concerning the confirmation of receivables due from out of state insurers, we have seen no authority supporting the bold suggestion that an auditor is entitled to rely solely or primarily on the representations of management when evaluating the worth of a discontinued operation. Defendants have offered no significant response to the plaintiffs' allegations that Touche Ross relied on management in this way; indeed, at oral argument on the renewed motion, defense counsel nearly conceded such reliance. *See, Transcript of hearing held March 16, 1988,* p. 13.

Touche Ross also failed to comply with *APB #30* ¶ 18(d), which calls for footnote disclosure consisting of "a description of the remaining assets and liabilities of the segment [here Union] at the balance sheet date."

Discovery and argument have not yet revealed a credible basis for Touche Ross's decision to assign a value of $10 million to Union. This failure, and the absence of footnote disclosure as suggested by *APB #30* ¶ 18, which would have allowed readers of the 1984 Hall report to consider for themselves the accuracy of Touche Ross's evaluation of the insolvent Union, are sufficient to support the inference necessary for the complaint to survive defendant's motions.

*Conclusion*

Our concern for outside professionals charged with fraud in federal securities fraud actions is not intended to immunize such entities from liability; rather, its purpose is simply to enhance the protection that Rule 9(b), Fed.R.Civ.P. provides all defendants from frivolous, burdensome, and embarrassing allegations of fraud brought primarily for their "in terrorem" value, and in aid of an effort to entangle a deep pocket found standing on the periphery of a fraud by others, often less able to respond in damages. *See, e.g., Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed. 539 (1975). After limited discovery tailored to determine whether an inference of fraud or reckless disregard may fairly be drawn against Touche Ross, we conclude that the complaint, as deemed amended by this order, is sufficient. The renewed Touche Ross motions to dismiss therefore are denied.

Counsel are directed to meet and establish a discovery schedule that will bring this action to a state of trial readiness as soon as practicable. A pre-trial conference will be held before this Court on September 28, 1988 at Courtroom 31 in White Plains, New York, at which time the status of discovery, and the terms of the schedule agreed upon, shall be reviewed.

SO ORDERED.