**CL–ALEXANDERS LAING & CRUICKSHANK, Plaintiff,**

v.

**Seymour B. GOLDFELD, Goldfeld and Charak, Laura Katz, in her Capacity as Preliminary Executrix of the Estate of Hyman Katz, and Arthur Andersen & Co., Defendants.**

**No. 87 Civ. 6113 (MBM).**

United States District Court, S.D. New York.

June 4, 1990.

---

Jerome M. Congress, Krishnan S. Chittur, Milberg Weiss Bershad Specthrie & Lerach, New York City, for plaintiff.

James D. Zirin, James J. Sabella, Jill I. Braverman, Breed, Abbott & Morgan, New York City, for defendant Arthur Andersen & Co.

Thomas F. Breen, D'Amato & Lynch, New York City, for defendants Goldfeld and Goldfeld & Charak.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff CL–Alexanders Laing & Cruickshank ("Alexanders"), a London investment banker, arranged for certain of its clients to purchase in Great Britain 2 million shares in Container Industries, Inc. ("Container" or "CII"), a Delaware corporation with its principal place of business in New Jersey. The purchase was part of a private placement in June 1986. Plaintiff hired defendant Arthur Andersen & Co. of England ("Andersen–U.K.") to provide a "comfort letter"[1] for inclusion in the prospectus. Plaintiff alleges that defendant Arthur Andersen & Co., an Illinois corporation ("Andersen–U.S."), substantially assisted Andersen–U.K. in the preparation of the comfort letter. The parties have stipulated that, for purposes of this case, Andersen–U.K. and Andersen–U.S. are part of one international organization. Defendants Seymour B. Goldfeld and Hyman Katz, now both deceased, served as Container corporate officers. Defendant Goldfeld & Charak, a New York law firm and Container's legal counsel, provided an opinion letter warranting that there were no material misstatements or omissions in the prospectus. Goldfeld & Charak and Goldfeld, the corporate officer, are referred to collectively as "the Goldfeld defendants."

Plaintiff charges that defendants conspired to issue misleading and false statements about Container's sales projections for "Exxel" self-pressurized spray containers; plaintiff's primary claims arise under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1989), with pendent claims for breach of contract and fraud. Additionally, plaintiff claims that Katz violated § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2) (1982). The court on March 30, 1989 denied defendants' motion to dismiss for lack of subject matter jurisdiction and forum non conveniens, CL–Alexanders Laing & Cruickshank v. Goldfeld et al., 709 F.Supp. 472 (S.D.N.Y. 1989), and later denied plaintiff's motion for class certification, CL–Alexanders Laing & Cruickshank v. Goldfeld et al., 127 F.R.D. 454 (S.D.N.Y.1989). Familiarity with those opinions is assumed herein. Defendants Goldfeld, the firm of Goldfeld & Charak, Andersen–U.S. and Andersen U.K. have moved for summary judgment. After that motion was fully briefed, plaintiff moved to amend its complaint. For the reasons stated below, plaintiff's motion to

---

1. "Comfort letters," originally known as "cold comfort letters," usually accompany the audited financial statements for the company. H. Bloomenthal, 3A *Securities and Federal Corporate Law*, § 8.16[3][b] (Rev.1988). The letter contains whatever assurances the accountant is willing to provide with respect to the reliability of the financial statements. The usual force of these assurances and their effect on a prospective investor may account for the term "cold comfort."

amend is denied and defendants' motion for summary judgment is granted.

## I.

Container was established in 1980 to develop, manufacture, and market various spray containers under the trademark "Exxel." In 1986, Container sought to raise funds in England through a private placement of securities. Between June 9 and June 29, 1986, plaintiff arranged a private placement of 2 million common shares and related warrants. Plaintiff itself bought 631,700 shares for a total of $1,263,400. (First Amended Complaint ¶ 19, hereinafter "Complaint") The prospectus, dated June 9, 1986, included projections for unit sales and net income for the second, third, and fourth quarters of 1986. (*Id.* ¶ 21) It represented that by mid–1986, Container's plant would produce at full capacity. (*Id.* ¶ 23)

During the spring of 1986, plaintiff and the directors of Container agreed that Andersen would review the Company's projections and provide a comfort letter to be included in the prospectus. (*Id.* ¶ 26) Plaintiff alleges that Andersen actively participated in the development of the projections. (*Id.* ¶ 30) In the comfort letter, however, Andersen specifically disclaimed responsibility for the projections. (Zirin Aff., Exh. 1 at 24)

Container failed to meet the projections for the second quarter. (Complaint ¶ 37) Whereas the prospectus projected second quarter unit sales of 1,730,000 units and a loss of $474,367, Container sold fewer than 350,000 units and sustained a loss of $885,-339. (*Id.*) Plaintiff argues that when Katz and Goldfeld published the prospectus on June 29, 1986, they knew of the discrepancy between the projected and actual results for the second quarter but failed to disclose it. (*Id.* ¶ 38) They allegedly knew also that the machinery necessary to achieve the projected production was not in place.

Plaintiff asserts that all defendants breached their responsibilities by not disclosing the shortfall in the second quarter projections. (*Id.* ¶ 40) Plaintiff argues that had it been apprised of the discrepancy

between projected and actual second quarter performance, it would have cancelled the placing agreement, which it had a right to do until June 30, 1986. (*Id.* ¶ 41) Plaintiff alleges that defendants knew and intentionally or recklessly failed to disclose that the projections for the second quarter were too high (*id.* ¶¶ 56–58), and contends that these omissions operated as a fraud in violation of § 10(b) of the Exchange Act and Rule 10b–5. (*Id.* ¶ 55)

## II.

If "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c), summary judgment is appropriate. The moving party bears the burden of proving that no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). All ambiguities are resolved against the moving party, and all reasonable inferences are drawn in favor of the party against whom summary judgment is sought. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–69, 90 S.Ct. 1598, 1609–15, 26 L.Ed.2d 142 (1970); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). Summary judgment is permissible only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Notwithstanding these rules and presumptions, courts need not be reluctant to grant summary judgment in appropriate cases. One of the purposes of summary judgment is "to isolate and dispose of factually insupportable claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Although cases where state of mind is at issue sometimes are not susceptible of summary judgment, the Second Circuit has held that "[s]ummary judgment is appropriate when the non-moving party has come forward with no evidence from which a reasonable fact-finder could find that the

defendant had the requisite state of mind." *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749, 756 (2d Cir.1986). When there is no material issue of fact, summary judgment may be used as an appropriate remedy in a Rule 10b–5 case involving the preparation of financial projections. *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103 (S.D.N.Y.1989).

■ To defeat a motion for summary judgment, the adverse party may not rest upon mere allegations or denials in its pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). A genuine issue cannot be raised by statements in affidavits not based on personal knowledge, *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988), or by statements of counsel unsupported by the record. *Beyah v. Coughlin*, 789 F.2d 986, 989–90 (2d Cir. 1986).

### III.

■ Although cautionary language in a prospectus does not bar claims under Section 10(b), *see In re Frank B. Hall & Co.*, 693 F.Supp. 1460 (S.D.N.Y.1988), it does limit the extent to which a plaintiff may reasonably rely on the statements and data in the prospectus. In a recent case in this district, the court noted that "warnings and disclaimers ... clearly limit[ed] the degree to which an investor could reasonably rely on these [offering] documents as a forecast of the future." *Friedman v. Arizona World Nurseries Ltd. Partnership*, 730 F.Supp. 521, 541 (S.D.N.Y.1990). A prospectus which clearly states the risks involved will not support an allegation of misrepresentation under Section 10(b). *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (citations omitted); *see also Stevens v. Equidyne Extractive Industries*, 694 F.Supp. 1057, 1063 (S.D.N.Y.1988) ("no liability attaches to an offering memorandum that purports to be speculative").

The "Risk Factors" at the beginning of the Container prospectus virtually bristle with warnings:

"1. The Company does not presently have sufficient customer orders to operate at a break-even level.... [N]o assurance can be given that the Company's business will be successful....

4. The financial projections contained in Appendix II anticipate certain levels of sales. These sales will only be achieved upon the successful conversion of the interest in the Company's products into firm orders. Particular attention should be paid to the sensitivity analysis contained in Appendix II."

Andersen's comfort letter, included in the prospectus, contains even stronger cautionary language.

"1. ... *The Projections, and the principal assumptions on which they are based ... are the sole responsibility of CII.* They were approved by duly authorised executive officers and members of the board of directors of CII (the officers) on 27th May 1986.

2. We have been informed by the officers that they believe the assumptions on which the 1986 Projections are based fall within a range of possibilities which they consider reasonable. We express no opinion on this view and stress that ... *the Projections do not constitute forecasts of the most likely results or cash flow of CII for the year ending 31 December 1986 or its state of affairs at 31 December, 1986. As you are aware, we as accountants are not competent to judge the reasonableness or otherwise of the assumptions used in the Projections* and, in addition, as the Projections relate to the future, they may be affected by unforeseen events. Accordingly, we can express no opinion on how closely they will correspond to actual results.

3. We would emphasise that CII has not yet generated any significant revenues and is not yet trading profitably. Neither has it previously attained the production levels projected. In view of the inevitable uncertainties associated with a company at this stage of its development, *any investment in CII must be viewed as having significant risks associated with it....*

5. Our review indicated that the Projections, so far as the accounting policies and calculations are concerned, have

been compiled on the basis of the assumptions made by the directors of CII, as referred to above, and are presented on a basis consistent with the accounting policies normally adopted by the company."

(Zirin Aff., Exh. 1) (emphasis added)

This cautionary language included in the placing memorandum shows that plaintiff, a highly sophisticated investor, should have appreciated that there were significant risks associated with the placement of Container shares; it cannot claim that it was misled when the financial projections were not fulfilled. In another recent case in this district on similar facts, the court granted summary judgment, holding "that the offering materials are not misleading as a matter of law, or, to the same effect, ... plaintiffs' reliance on certain portions of the materials was not reasonable as a matter of law." *Brown v. E.F. Hutton Group*, 735 F.Supp. 1196 (S.D.N.Y.1990) (Zirin Reply Aff., Exh. 4). The language in *Brown* applies here as well.

■ A claimant under Section 10(b) of the Securities Exchange Act or Rule 10b–5 must establish the following elements: (1) a material misstatement or omission, (2) indicating an intent to deceive or defraud (scienter), (3) in connection with the purchase or sale of any security, (4) through the use of interstate commerce or a national securities exchange, (5) upon which the plaintiff detrimentally relied, and (6) where the fraud in fact caused the injuries. *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986); *Friedman*, 730 F.Supp. 521 (1990). Plaintiff must present some evidence to suggest that defendant Andersen had "scienter," or "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). Absent scienter, there is no claim. Only "intentional or willful conduct," 425 U.S. at 199, 96 S.Ct. at 1384, and actions made "other than in good faith," *id.* at 206, 96 S.Ct. at 1387, are cognizable under Section 10(b); negligence is not enough.

■ Recklessness may be sufficient to prove a violation of Rule 10b–5, *Sirota v.*

*Solitron Devices, Inc.*, 673 F.2d 566 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982), but to establish scienter through recklessness, it is not enough for plaintiff to establish that the method of preparation for the projections used simply was unreasonable. The "plaintiff must establish that the defendant disseminated the forecasts knowing they were false or that the method of preparation was so egregious as to render their dissemination reckless." *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103, 137 (S.D.N.Y. 1989). In other words, recklessness connotes defendant's knowledge that it does not have sufficient basis to speak.

■ Plaintiff attempts to show scienter by claiming that defendants knew that the second quarter projections would not be met but failed to change the projections or disclose their inaccuracy. Plaintiff argues that the principal reason for the second quarter shortfall was the cancellation of a large order from Clairol and that Andersen and the Goldfeld defendants recklessly disregarded this cancellation in the projections.

■ In its Rule 3(g) statement (¶ 42), Andersen stated that it did not know about the Clairol cancellation. Plaintiff has presented no evidence to the contrary and has not controverted Andersen's statement in its own Rule 3(g) statement; this fact is therefore deemed admitted. *Ring v. Estee Lauder, Inc.*, 702 F.Supp. 76, 78–79 (S.D.N.Y.1988), *aff'd*, 874 F.2d 109 (2d Cir.1989). Plaintiff's mere unsupported allegation that Andersen was reckless in disregarding the cancellation does not require that a trial be held.

Likewise, plaintiff cannot prove the Goldfeld defendants knew that actual sales for the second quarter were substantially less than those projected in the prospectus. Nothing in the record suggests that those defendants engaged in willful or knowing conduct to defraud plaintiff. "Although the *Hochfelder* standard permits scienter or intent to be proved by circumstantial evidence, *Mayer v. Field Systems Corp.*, 803 F.2d 749, 756 (2d Cir.1986), *Wechsler v.*

*Steinberg,* 733 F.2d 1054, 1058 (2d Cir. 1984), the circumstances must in fact prove such intent. . . ." *Kearney v. Prudential–Bache Secur., Inc.* 701 F.Supp. 416, 430 (S.D.N.Y.1988). Plaintiff has not shown such circumstances here.

■ Plaintiff would rely on expert accountant testimony to prove Andersen's scienter. First, while expert opinion may be helpful, summary judgment can be defeated only by the allegation of specific facts. A particular set of facts "cannot be established by mere speculation or idiosyncratic opinion, even if th[e] opinion [about the facts] is held by one who qualifies as an expert under Fed.R.Evid. 702." *In re Agent Orange Prods. Liab. Litig.,* 818 F.2d 187, 193 (2d Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988). It is undisputed that the engagement letter between Andersen and plaintiff contains an explicit agreement by plaintiff that Andersen would not be required to "judge the reasonableness or otherwise of [the] assumptions" underlying Container's projections or to opine on "how closely actual results will correspond to projected results." (Zirin Aff. Exh. 2 at 2) An expert's allegations that Andersen "disregarded evidence casting considerable doubts on the achievement of the 1986 profit pojection of CII" and "failed to act in accordance with professional standards" (Stoy Haward Report at 41) does not create an issue of material fact as to Andersen's obligations under the engagement letter, the only obligations Andersen had to meet.

Plaintiff's experts analyze the case as one of negligence, not fraud. To allege scienter in a Rule 10b–5 case, plaintiff "must establish that a material issue of fact exists regarding whether the method of preparation of the [financial projections] was so egregious as to render their dissemination reckless." *Detwiler,* 728 F.Supp. 103, 138. It is not enough for plaintiff to establish that the method of Andersen's preparation was simply unreasonable. While plaintiff's expert calls Andersen's work "inadequate" (*Id.* at 34), he stops far short of calling it reckless, or of alleging facts that show it was reckless in view of

the limited role Andersen assumed pursuant to the engagement letter. Plaintiff has failed to prove through its expert testimony that scienter is a material issue with respect to Andersen.

Plaintiff argues that Andersen's work did not fulfill the professional standards set by Andersen in its internal literature. There is no evidence that Andersen's internal literature was ever provided to plaintiff until litigation or that plaintiff relied on it in any way. Andersen's engagement letter provided that if Andersen were to be required to perform any work beyond that set forth in the engagement letter, it would have to be "agreed between us in writing." (Zirin Aff. Exh. 2 at 2) There is no evidence of a writing in which Andersen agreed to assume greater responsibility than that described in the engagement letter.

Plaintiff alleges the Goldfeld defendants knew that the 1986 second quarter production figures would not match the projections. (Complaint ¶¶ 38, 39) Yet plaintiff has presented no evidence that they had actual knowledge of this shortfall. The Goldfeld defendants, on the other hand, have presented significant evidence to show that they did not have such knowledge. Sharon Bregman, Container's marketing director, testified that she never discussed second quarter sales with Goldfeld. (Breen Aff., Exh. A at 97–99) Dale Barney, the chief financial officer, testified that he was at no meetings with Goldfeld during the spring of 1986 when second quarter sales were discussed. (Breen Aff., Exh. B at 130–135) The Goldfeld defendants point to other testimony as well which supports their argument that they had no knowledge of the shortfall. (*See* Breen Aff., Exh. D at 169–170; Exh. E at 160–161; Exh. F at 118–119; Exh. G at 152) In short, plaintiff has failed to establish scienter on the part of the Goldfeld defendants.

■ Further as to Andersen, non-disclosure even of a material fact does not create liability under Rule 10b–5 absent a duty to disclose that fact. *Chris–Craft Indus., Inc. v. Piper Aircraft Corp.,* 480

F.2d 341, 363 (2d Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 232, 38 L.Ed.2d 148 (1973). According to the engagement letter between Andersen and plaintiff, Andersen did not have a duty to report on actual sales or the reasonableness of management's sales assumptions. (Zirin Aff., Exh. 2 at 2) In its comfort letter, Andersen explicitly declined to comment on the reasonableness of management's assumptions underlying the financial projections. (Zirin Aff., Exh. 1) Plaintiff cannot argue that defendant Andersen breached a duty it did not have. "[S]ilence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic, Inc. v. Levinson,* 485 U.S. 224 n. 17, 108 S.Ct. 978, 987 n. 17, 99 L.Ed.2d 194 (1988).

▮ Plaintiff alleges in its brief, although not in its complaint, that it relied on an oral statement by an employee of Andersen, David Kirk, who allegedly said that the sales projection figures were the actual sales figures. (Pl. Mem. at 4, 39–40) To state a claim under Rule 10b–5, plaintiff must prove not only that it relied on the alleged misrepresentation, but that it did so justifiably. These alleged statements, which Kirk denies having made (Zirin Reply Aff., Exh. 8 at 302), directly contradict the clear language of the prospectus. Plaintiff cannot base a fraud claim on an oral representation that directly contradicts written offering materials. *Feinman v. Schulman Berlin & Davis,* 677 F.Supp. 168, 170 (S.D.N.Y.1988). "Any investor who relied on those [oral] statements, which flew in the face of the numerous cautionary statements in the written offering materials, clearly did so unreasonably." *Brown v. E.F. Hutton Group,* 735 F.Supp. 1196, 1202 (S.D.N.Y.1990) (Zirin Aff., Exh. 4 at 314).

In its first amended complaint, plaintiff alleges that Katz violated Section 12(2) of the Securities Act of 1933 because Katz fraudulently offered and sold securities through interstate commerce. Plaintiff fails to argue this claim against Katz in its submissions, or to adduce any evidence against Katz to support this claim, or to support the assertion that Katz knew of misrepresentations in connection with the sales. Accordingly, no fact-finder could find in plaintiff's favor against Katz.

## IV.

▮ After defendants' summary judgment motion had been fully briefed, plaintiff, apparently sensing what was to come, moved to amend its complaint. This motion to amend is plaintiff's second such motion in this action. Plaintiff offers two reasons for this motion: (1) to conform the complaint to facts newly obtained through discovery, and (2) to state a new claim for relief against the Goldfeld defendants under Section 12(2) of the Securities Act of 1933 for active solicitation of securities sales, which claim plaintiff asserts was barred when it filed the case in 1987.

These two reasons are more excuse than justification for the prolix and tendentious 46–page document plaintiff seeks to file. The proposed new complaint, festooned with unnecessary evidentiary detail, seems to have been crafted in order to elicit a strong reaction in the jury room while simultaneously obscuring the fact that this case should never see the inside of a jury room because, as the proof on the summary judgment motion shows, no basis exists for granting relief. A few sample additions to the "factual background" section of the complaint, which have nothing to do with the new Section 12(2) claim against the Goldfeld defendants, include:

"26. In the course of its work, Andersen learned that the 1986 projections had no reasonable basis and were grossly inflated and deceptive. Under fundamental ethical standards of the accounting profession, Andersen had a duty to disclose this information to plaintiff. In willful disregard of the importance of that information to the plaintiff, Andersen concealed its knowledge of the groundless nature of the projections. Beyond that, Andersen actually represented to plaintiff that the projections were reliable because Andersen had built a 'cushion of conservatism' into them, a statement which was intentionally or recklessly deceptive."

"39. During its work, Andersen came across numerous 'red flags' which indicated that the 1986 projections were without basis and very unlikely to be realized. In violation of its duty (arising, *inter alia*, under generally accepted standards within the accounting profession) to disclose such information to its client, it never revealed the adverse information to plaintiff. Furthermore, Andersen's work was shot through with so many failures to document critical areas and with such glaring failures to seek additional information despite serious warning signs that Andersen must be deemed to have recklessly closed its eyes to known dangers, or alternatively, to have knowingly attempted to conceal the true situation from plaintiff."

The Supreme Court has articulated the standard for granting leave to amend in the following way:

"[In] the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be 'freely given.'"

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Plaintiff's first reason for amendment, that new facts have come to light during discovery, is specious. Discovery ended in October 1989; plaintiff did not request leave to amend until April 6, 1990, nearly six months later. Were newly discovered facts truly at the heart of plaintiff's motion, plaintiff presumably would have made this motion during discovery or, at the latest, shortly after its conclusion. Instead, plaintiff has waited to move to amend until after defendants' summary judgment motion was fully submitted.

Plaintiff's second reason for amendment, that Second Circuit case law on liability under Section 12(2) of the Securities Act of 1933 has changed, is equally specious. Plaintiff asserts that only after *Wilson v.*

*Saintine Exploration & Drilling Corp.,* 872 F.2d 1124 (2d Cir.1989), could it reasonably bring this claim. Plaintiff fails to point out that *Wilson* was decided April 5, 1989, one year before it filed this motion to amend and, again, long before defendants' motion for summary judgment.

Plaintiff's proposed complaint does not merely add new facts and a claim against the Goldfeld defendants under Section 12(2); on the contrary, plaintiff has rewritten the complaint to include a full ten pages of additional factual material and new claims. Without so informing the court in its brief, plaintiff has included many new allegations against Andersen in its proposed complaint, including that Andersen failed to uphold the standards of the profession (2d Amended Complaint, ¶¶ 27–29); that Andersen's statements must have been intentionally or recklessly deceptive because Andersen represented that it had built a "cushion of conservatism" into the projections (*Id.* ¶ 26); and that Andersen made no effort to update its bases for the projections between May 20, the conclusion of Andersen's field work, and the signing of the comfort letter on June 9 (*Id.* ¶ 43). Plaintiff added also a totally new claim for breach of contract and has thoroughly revised its Section 10(b) claim against Andersen. (*Id.* ¶¶ 111–114, 94–99)

Although the bulk of the additional material in the proposed complaint pertains to defendant Andersen, plaintiff does not make this point anywhere in its memorandum of law, creating the impression that plaintiff has deliberately obscured its attempt to rewrite the complaint. Here, it is difficult to escape the conclusion that the timing of this motion and the content of the proposed complaint are eloquent of their purpose, and that the purpose is to churn up so many last-minute factual allegations that a court will be tempted to conclude that somewhere must lie an issue of material fact.

 Where there has been excessive delay before seeking to serve the amended complaint, leave to do should be denied absent a convincing explanation for the delay. *Goss v. Revlon, Inc.,* 548 F.2d 405,

407 (2d Cir.1976), *cert. denied* 434 U.S. 968, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). When the motion is made after discovery has been completed and a motion for summary judgment has been filed, leave to amend is particularly disfavored because of the resultant prejudice to defendant. *Ansam Assoc. Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985). In any event, plaintiff does not claim that the alleged facts underlying the verbiage in its new complaint were unavailable when the summary judgment motion was briefed. As discussed above, plaintiff's factual showing on that motion was inadequate, the proof of facts lying in the evidence of them, not in the pleading of them.

Fed.R.Civ.P. 15(a) requires that leave to amend shall be "freely given," but there is a difference between freedom and license. That difference is spelled out in the Rule's next phrase, which mandates that leave be freely given only "when justice so requires." Because justice does not so require in this case, plaintiff's motion to amend is denied.

### V.

This court has pendent jurisdiction over plaintiff's state law claims for breach of contract and common law fraud because all of plaintiff's claims derive from a common nucleus of operative fact and because hearing the claims in one proceeding would serve the purposes of judicial economy, convenience, and fairness to the litigants. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Absent exceptional circumstances, however, a federal court should refrain from exercising pendent jurisdiction when federal claims are disposed of by summary judgment. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir.), *cert. denied* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). Because summary judgment is granted in favor of defendants on the federal claims and there are no exceptional circumstances, there is no reason to retain jurisdiction over plaintiff's pendent state law claims.

In sum, plaintiff's motion to amend the complaint is denied, defendants' motion for summary judgment is granted as to the federal claims, and the state law claims are dismissed for lack of subject matter jurisdiction.

SO ORDERED.