ORDER ON DEFENDANT’S MOTION TO DISMISS
 

 MILLER, District Judge.
 

 This matter is before me on defendant Timothy J. Miles’ (Miles) motion to dismiss, filed May 27, 2003. For the reasons stated below, the motion will be denied.
 

 Background
 

 Plaintiff Securities and Exchange Commission (SEC) brings this suit alleging violations of federal securities laws. In particular, the SEC asserts the following claims, designated as “Counts,” against Miles: (1) Fraud in violation of Section 10(B) of the Exchange Act and Rule 10b — 5; (2) Fraud in violation of Section 17(a)(1) of the Securities Act; and (3) Fraud in violation of Sections 17(a)(2) and (3) of the Securities Act. The relief sought by the SEC includes a permanent injunction enjoining Miles from violating these provisions of the federal securities laws.
 

 According to the complaint, the facts are as follows. In December .1998, defendant Timothy J. Miles (Miles) incorporated Auric Enterprises, Inc. (Auric), in the state of Nevada, naming his two daughters and a Mend as officers and directors. Miles offered for sale Auric common stock and stock purchase warrants to friends and relatives. Auric issued Miles more than 50% of its stock and warrants.
 

 In the fall of 1999, Miles asked a registered broker-dealer to file a Form 211 with the National Association of Securities Dealers (NASD) so that the broker-dealer could enter quotes for Auric’s common stock on the Over-the-Counter Bulletin Board (OTCBB). Miles provided the broker-dealer with documents containing false statements about his relationships and affiliations with other Auric shareholders, his involvement in the solicitation of the shareholders, and their financial status. He gave certain investors false addresses to put on their subscription agreements, and told one investor to falsely state on his subscription agreement that the investor was accredited. Further, he created false information showing that some investors had invested in Auric because they knew its president, when, in fact, these investors bought Auric stock because of their connection with Miles, and had never met the president. By providing this false information, Miles intended to conceal his complete control over Auric.
 

 Relying on the false information in the Form 211, the NASD authorized the broker-dealer to enter quotes for Auric. On December 15,1999, the broker-dealer commenced entering quotes on the OTCBB.
 

 Also in December 1999, Auric merged with Freedom Golf, a privately-held corporation that manufactures golf equipment. Following the merger, the other defen
 
 *MCDXXI
 
 dants in this case allegedly used various illegal means to promote the stock of Freedom Golf. These allegations are not relevant to this motion because in the SEC does not allege any wrongdoing by Miles after his providing of false information for Auric’s Form 211.
 

 Standard of Review
 

 A motion to dismiss is appropriate when it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief. The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff.
 
 United States v. Colorado Supreme Court,
 
 87 F.3d 1161, 1164 (10th Cir.1996).
 

 Discussion
 

 Miles filed his motion to dismiss seeking dismissal of all claims against him pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). Miles makes three arguments: in its complaint, the SEC failed to (1) adequately plead a prima facie case under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (“the anti-fraud provisions”); (2) plead fraud with particularity as required by Rule 9(b); and (3) adequately allege a prima facie case for a permanent injunction,
 

 1.
 
 Failure to Plead Prima Facie Case under Federal Securities Laws
 

 The elements of Section 10(b) and Section 17(a) are essentially the same. To establish a violation of Section 10(b) and Rule 10b-5, and Section 17(a)(1), the SEC must prove the following elements: (1) a material misrepresentation, (2) in connection with the purchase or sale of a security, (3) scienter, and (4) use of the jurisdictional means.
 
 See Geman v. SEC,
 
 334 F.3d 1183, 1192 (10th Cir.2003) (quoting
 
 SEC v. Rana Research, Inc.,
 
 8 F.3d 1358, 1363 (9th Cir.1993));
 
 SEC v. Rogers,
 
 790 F.2d 1450 (9th Cir.1986),
 
 overruled on other grounds by Pinter v. Dahl,
 
 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988);
 
 SEC v. Hasho,
 
 784 F.Supp. 1059, 1105-06 (S.D.N.Y.1992). Under Section 17(a)(2)
 
 &
 
 (3), the elements are identical except the SEC need show only negligence instead of scienter.
 
 SEC v. Dain Rauscher, Inc.,
 
 254 F.3d 852, 856 (9th Cir.2001).
 

 Miles argues only the first three elements; namely that the complaint failed to adequately plead (1) that Miles made any material misrepresentations; (2) scienter, in counts one and two; and (3) a connection between any misrepresentations made by Miles and any particular securities transaction. I will address each claim.
 

 a.
 
 Material Misrepresentations
 

 A statement is only material “if a reasonable investor would consider it important in determining whether to buy or sell stock.”
 
 Grossman v. Novell, Inc.,
 
 120 F.3d 1112, 1119 (10th Cir.1997) (citing
 
 TSC Indus., Inc. v. Northway, Inc.,
 
 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). Materiality is a fact-specific inquiry, and typically a jury question.
 
 Id.
 
 at 1118 (citing
 
 Fecht v. Price Co.,
 
 70 F.3d 1078,1080-81 (9th Cir.1995)).
 

 Here, the SEC alleged that Miles made misstatements regarding Miles’ relationships and affiliations with other Auric shareholders, his involvement in the solicitation of the shareholders, and their financial status, in an attempt to conceal his complete control over Auric, its shareholders, and its securities. Compl. at ¶¶ 15-18. I cannot say that, as a matter of law, a reasonable investor would not consider Miles’ degree of control over Auric important in determining whether to buy Auric stock. The SEC has adequately plead misrepresentations.
 

 
 *MCDXXII
 
 b.
 
 Scienter
 

 The Supreme Court has defined the term “scienter” as “a mental state embracing intent to deceive, manipulate, or defraud.”
 
 City of Philadelphia v. Fleming Companies, Inc.,
 
 264 F.3d 1245, 1258 (10th Cir.2001) (quoting
 
 Ernst & Ernst v. Hochfelder,
 
 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). Moreover, recklessness, defined as “conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it,” also satisfies the scienter requirement.
 
 Id.
 
 (quoting
 
 Anixter v. Home-Stake Prod. Co.,
 
 77 F.3d 1215, 1232 (10th Cir.1996)).
 

 In its complaint, the SEC alleged that Miles provided and directed others to provide false information to a broker-dealer to submit to the NASD so that Miles could hide his complete control over Auric, its shareholders, and its securities. Compl. at ¶ 18. This adequately alleges scienter.
 

 c.
 
 Connection between misrepresentations and securities transaction.
 

 For the first time in his reply, Miles belatedly raises an argument that his statements in the Form 211 and other submissions to NASD were not given “in connection with” the purchase or sale of a security. The SEC responded in its surre-piy-
 

 Miles asserts that his representations to the NASD were not temporally related or connected to the ultimate sale of Freedom Golf stock and that a “but for” test does not suffice to establish the required “in connection with” element, citing to
 
 Chemical Bank v. Arthur Andersen & Co.,
 
 726 F.2d 930, 943 (2nd Cir.1983),
 
 cert denied,
 
 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).
 

 The SEC does indeed rely on a “but for” analysis in its complaint. The complaint states: “but for the false information Miles was responsible for submitting to the NASD, Auric would never have been quoted on a public exchange.” Complaint, ¶ 19. The SEC maintains that there should be a broad interpretation of the “in connection with” language so that it meets that requirement “by alleging that as a result of the illegal conduct, a public market for the purchase and sale of Auric’s securities was created.” Surreply, at 4.
 

 In addressing this issue I first note that Miles’ reliance on the
 
 Chemical Bank
 
 case is misplaced as it is factually inapposite. The court’s statement that “ ‘but-for’ causation is not enough” is tied to much different circumstances.
 
 Id.
 
 There the argument was that but for defendant’s alleged misrepresentations, a loan would not have been made and there would have been no pledge of stock which the lender argued triggered section 10(b) and Rule 10b-5 liability. The court’s rejection of such a “but for” analysis was based on the simple observation that “the alleged misrepresentation simply induced the banks to make loans collateralized by a pledge of a security as to which no misrepresentations were made... We cannot believe that if a person misrepresents his financial condition in order to borrow $100,000 from a bank to which he give a one-month note partially secured by a pledge of GM stock, the case comes within § 10(b) and Rule 10b-5 ...”
 
 Id.
 
 at 944. That is not the circumstance of this case where the alleged misrepresentations directly concerned the securities later marketed. Accordingly,
 
 Chemical Bank
 
 is not dispositive of this issue.
 

 The real issue is whether alleged misrepresentations allegedly enabling the marketing of the securities have sufficient “connectivity” to later securities transactions. The anti-fraud provisions “should be construed not technically and
 
 *MCDXXIII
 
 restrictively, but flexibly to effectuate its remedial purposes.”
 
 SEC v. Zandford,
 
 535 U.S. 813, 819, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002)(internal quotations omitted). According to the leading case,
 
 SEC v. Texas Gulf Sulphur Co.,
 
 401 F.2d 833, 860 (2nd Cir.1968),
 
 cert denied,
 
 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), the “in connection with” requirement is satisfied if “the device employed, whatever it may be, be of a sort that would cause reasonable investors to rely thereon, and ... so relying, cause them to purchase or sale a corporation’s securities.”
 
 See also United Intern. Holdings, Inc. v. Wharf Holdings Ltd.,
 
 210 F.3d 1207, 1221 (10th Cir.2000). (“As such, the misrepresentations were made to influence [plaintiffs] investment decision and were made in connection with the purchase or sale of a security”);
 
 McGann v. Ernst & Young,
 
 102 F.3d 390, 396 (9th Cir.1996) (confirming continued validity of
 
 Texas Gulf).
 

 Existing authority is that the “in connection with” language “should be its natural meaning and imposing liability on all those whose false assertions are reasonably calculated to influence the investing public.”
 
 McGann,
 
 102 F.3d at 397.
 

 The misrepresentation need not be made with respect to a particular sales transaction but should be applied generally. For instance, statements in press releases, annual and quarterly reports, proxy statements and SEC filings have been found to satisfy the “in connection with” element because investors rely on such documents.
 
 See SEC v. Rana Research, Inc.,
 
 8 F.3d 1358, 1362 (9th Cir.1993) (listing cases). The cases cited by the SEC reflect the same rule.
 
 See In re Carter-Wallace Sec. Litig.,
 
 150 F.3d 153, 156 (2nd Cir.1998) (technical and detailed advertisements in sophisticated medical journals);
 
 McGann,
 
 102 F.3d at 397 (fraudulent audit report that accountants knew would be included by client in Form 10-K);
 
 Rana,
 
 8 F.3d at 1362 (press releases);
 
 In re Ames Dep’t Stores Stock Litig.,
 
 991 F.2d 953, 966 (2nd Cir.1993) (annual reports, public statements, SEC filings);
 
 SEC v. Hasho,
 
 784 F.Supp. 1059, 1106 (S.D.N.Y.1992) (statements by registered representatives to customers);
 
 In the matter of New Allied Dev. Corp.,
 
 S.E.C. Release No. 34-37990, 1996 WL 683705, at *5-6 (Nov. 26, 1996) (Forms 211 and press releases).
 

 In this vein I conclude that false allegations enabling a stock to be publicly traded are “reasonably calculated to influence the investing public” 102 F.3d at 397 and hence made “in connection with” the purchase or sale of a security.
 

 2.
 
 Failure to Plead Fraud with Particularity
 

 In order to adequately plead fraud under Rule 9(b), a complaint must “set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.”.
 
 Schwartz v. Celestial Seasonings, Inc.,
 
 124 F.3d 1246, 1252 (10th Cir.1997) (quoting
 
 Lawrence Nat’l Bank v. Edmonds,
 
 924 F.2d 176, 180 (10th Cir.1991)). Here, as noted above, the SEC has alleged that Miles caused certain false representations to be part of the Form 211, filed with the NASD in the fall of 1999, misrepresentations resulting in Auric stock being quoted on the OTCBB. This adequately affords Miles “fair notice of plaintiffs claims and the factual ground upon which they are based.”
 
 See id.
 
 (quoting
 
 Farlow v. Peat, Marwick, Mitchell & Co.,
 
 956 F.2d 982, 987 (10th Cir.1992)).
 
 [1]
 

 
 *MCDXXIV
 
 3.
 
 Failure to Plead Prima Facie Case for Injunction
 

 The SEC may obtain an injunction based on the violations of securities laws if it “demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future.”
 
 SEC v. Pros Intern., Inc.,
 
 994 F.2d 767, 769 (10th Cir.1993). Miles argues that the SEC’s complaint provides me with no basis for inferring that there is a reasonable likelihood of future violations.
 

 Although Miles is correct that the SEC must eventually prove a reasonable likelihood of future violations, that does hot mean “the SEC is subject to a higher standard of pleading when it seeks injunc-tive relief.”
 
 SEC v. Fenster,
 
 929 F.Supp. 1346, 1349 (D.Colo.1996).
 
 Fenster
 
 involved a similar situation, wherein the defendant argued that “the SEC had alleged insufficient facts regarding his propensity to engage in future securities violations to state a claim for' injunctive relief.”
 
 Id.
 
 Like Judge Kane in
 
 Fenster,
 
 I find Miles’ argument premature.
 
 See id.
 
 This issue must await resolution until after the SEC has had the opportunity to present evidence supporting its claims.
 

 Accordingly, defendant’s motion to dismiss is denied.
 

 [1]
 

 . Miles also complains that he has been "lumped in” with other defendants in activities in which he is not charged. Def.’s Reply Mem. Mot. Dismiss, at 6. However, a motion for severance under Rule 21, not a motion to
 
 *MCDXXIV
 
 dismiss under Rule 12, is the appropriate vehicle in which to raise this issue.