SECURITIES AND EXCHANGE
COMMISSION, Plaintiff–
Appellant,

v.

PROS INTERNATIONAL, INC., David M.
Lamoreaux, Richard C. Landerman,
Jack M. Johnston, Defendants,

George Craig Stayner, Defendant–
Appellee.

No. 91–4119.

United States Court of Appeals,
Tenth Circuit.

June 9, 1993.

See also 972 F.2d 357.

Eric Summergrad, Associate Gen. Counsel, (James R. Doty, General Counsel, Jacob H. Stillman, Associate Gen. Counsel, and Michael G. Lenett, Senior Counsel with him on the brief), S.E.C., Washington, DC, for plaintiff-appellant.

Paul T. Moxley, Campbell Maack & Sessions, Salt Lake City, UT, for defendant-appellee.

Before BALDOCK and KELLY, Circuit Judges, and OWEN, District Judge.[†]

PAUL KELLY, Jr., Circuit Judge.

Plaintiff-appellant Securities and Exchange Commission (SEC) appeals from the district court's order granting summary judgment in favor of defendant-appellee George Stayner and denying a permanent injunction against Mr. Stayner. Our jurisdiction arises under 28 U.S.C. §§ 1291 & 1292(a) and we affirm.

## Background

Mr. Stayner, a certified public accountant, prepared a materially false and misleading audit report expressing an unqualified opinion on the financial statements of defendant Pros International. The financial statements grossly overstated the value of Pros' assets, giving a materially misleading description of Pros' financial condition. The audit report indicates that Mr. Stayner had prepared the report in accordance with generally accepted auditing standards when, in fact, Mr. Stayner performed no independent verification of assets and failed to discover management's misrepresentations.

The SEC named Mr. Stayner as a defendant in its securities enforcement action against Pros International and several other individual defendants who are not parties to this appeal. The suit alleged violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240 10b–5, and § 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and sought a permanent injunction against future violations of the securities laws by Mr. Stayner.

Mr. Stayner concedes that he negligently violated provisions of the federal securities laws. The district court granted Mr. Stayner's motion for summary judgment and denied the Commission's motion. The court

---

[†] The Honorable Richard Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.

found that Mr. Stayner violated § 17(a)(2) & (3) through negligence, but lacked scienter, which is a prerequisite for a violation of § 10(b), § 17(a)(1) or Rule 10b–5. The motion for a permanent injunction was denied.

### Discussion

We review the grant of summary judgment de novo, construing all evidence and drawing any inferences in a light most favorable to the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). However, once we determine that the issue is ripe for summary disposition, we review the district court's grant or denial of a permanent injunction for abuse of discretion. *United States v. W.T. Grant, Co.,* 345 U.S. 629, 635–36, 73 S.Ct. 894, 898–99, 97 L.Ed. 1303 (1953); *SEC v. Bonastia,* 614 F.2d 908, 913 (3rd Cir.1980).

An injunction based on the violation of securities laws is appropriate if the SEC demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future. *See* Securities Act § 20(b), 15 U.S.C. § 77t(b); Exchange Act § 21(d), 15 U.S.C. § 78u(d); *Bonastia,* 614 F.2d at 912. Determination of the likelihood of future violations requires analysis of several factors, such as the seriousness of the violation, the degree of scienter, whether defendant's occupation will present opportunities for future violations and whether defendant has recognized his wrongful conduct and gives sincere assurances against future violations. *SEC v. Youmans,* 729 F.2d 413, 415 (6th Cir.) *cert. denied,* 469 U.S. 1034, 105 S.Ct. 507, 83 L.Ed.2d 398 (1984); *SEC v. Blatt,* 583 F.2d 1325, 1334 n. 29 (5th Cir.1978). Although no single factor is determinative, we have previously held that the degree of scienter "bears heavily" on the decision. *SEC v. Haswell,* 654 F.2d 698, 699 (10th Cir.1981). A knowing violation of

§§ 10(b) or 17(a)(1) will justify an injunction more readily than a negligent violation of § 17(a)(2) or (3). However, if there is a sufficient showing that the violation is likely to recur, an injunction may be justified even for a negligent violation of § 17(a)(2) or (3). *Aaron v. SEC,* 446 U.S. 680, 700–01, 100 S.Ct. 1945, 1957–58, 64 L.Ed.2d 611 (1980).

Applying these factors, the district court's denial of the injunction did not constitute an abuse of discretion. Mr. Stayner was not a knowing participant in a fraudulent scheme. Although his actions were clearly negligent, and probably reckless, there has been no showing that Mr. Stayner intended to defraud investors. *See Haswell,* 654 F.2d at 700. The SEC and the dissent remind us that Mr. Stayner violated several basic auditing standards promulgated by the AICPA,[1] including the general standard requiring independence and the field work standard requiring that the auditor gather evidence to support an opinion on the financial statements. *See* SAS No. 1, AU § 150.02. This alone is insufficient to warrant an injunction, because we are required to look beyond alleged violations of professional standards and determine "whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct." *See Bonastia,* 614 F.2d at 912. The mere fact that the Defendant will remain an accountant is insufficient for an injunction. The SEC's authority does not extend to general regulation of the accounting profession and where, as here, there is no evidence that future violations are likely, we will not second guess the district court.[2]

A permanent injunction can have severe economic and professional consequences for an accountant. *See SEC v. Thermodynamics, Inc.,* 464 F.2d 457 (10th Cir.1972) *cert. denied,* 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 588 (1973). Mr. Stayner's violation was isolated. He is a sole practitioner whose practice is limited primarily to preparing in-

---

1. American Institute of Certified Public Accountants.

2. We recognize that Mr. Stayner engaged in auditing and accounting work for other companies connected with David Lamoreaux, and that the SEC suspended trading on two of the companies two years after Mr. Stayner's involvement. However, the SEC fails to allege or document

any wrongdoing by Mr. Stayner in connection with those companies. Therefore, Mr. Stayner's work for Pros remains the single incident of wrongdoing. We are presented with no pattern or practice of wrongdoing, nor evidence of recent or potential future work for public companies.

come tax returns. His errors in the audit report resulted from gross negligence and inexperience. He did not profit from the transaction, as he charged only a fraction of what a full audit should have cost, and never received payment. He has since discontinued preparing audit reports for public companies. There is no evidence that his current occupation is likely to present opportunities for future violations.

Mr. Stayner has also recognized the wrongful nature of his conduct, and assured the district court that this situation will not occur again. He supports his assurances by agreeing to limit his practice to tax return work.

Based on the foregoing, we find that no genuine issue of material fact exists and that the district court did not abuse its discretion in determining that Mr. Stayner is unlikely to violate the securities laws in the future.

AFFIRMED.

OWEN, District Judge, dissenting.

I respectfully dissent. In preparing his audit of PROS,[1] Stayner, at the time, a Certified Public Accountant for twelve years [2] who had done SEC work before, knew that his financial conclusions would be submitted to the Commission as part of the company's financial package, and that thereafter potential investors in PROS might well rely on his representations in determining whether or not to buy PROS stock. At the conclusion of his "audit", Stayner issued the following letter without qualification:

**CRAIG STAYNER & CO.**
CERTIFIED PUBLIC ACCOUNTANT
150 SOUTH 600 EAST, SUITE 5-C
SALT LAKE CITY, UTAH 84102
PHONE 359-7295

The Board of Directors

PROS International, Inc.
(formerly Ad–Print Corporation)
Salt Lake City, Utah

I have examined the accompanying Balance Sheet of PROS International, Inc. (formerly Ad–Print Corporation) as of November 30, 1986 and December 31, 1985, and the related Statements of Operations and Retained Deficit, Sources and Uses of Funds and Changes in Stockholders' Equity for the periods then ended. My examination was made in accordance with generally accepted auditing standards and, accordingly, included such tests of the accounting records and such other auditing procedures as I considered necessary in the circumstances.

In my opinion, the financial statements referred to above present fairly the financial position of PROS International, Inc. (formerly Ad–Print Corporation) as of November 30, 1986 and December 31, 1985 in conformity with generally accepted accounting principles consistently applied.

(signed Craig Stayner & Co.)

December 8, 1986

Stayner had been brought into the picture by his "fellow accountant" David Lamoreaux,[3] who was Chairman of the Board and Chief Financial Officer of PROS. They had known each other for several years and Lamoreaux had given Stayner accounting work on a number of prior occasions. Stayner, it is reasonable to conclude, expected to receive income from work Lamoreaux would give him in the future. Although his letter recites that his examination was conducted in accordance with generally accepted auditing standards (called by accountants "GAAS" [4]) and that the financial position of PROS was presented in conformity with consistently ap-

1. PROS was established as part of a fraudulent scheme to revive a shell corporation, merge it with another company, and sell shares in the merged entity to the public.

2. He is certified in Utah and California, and had been with Price Waterhouse for three years.

3. Lamoreaux has been permanently enjoined for his activities herein.

4. These include the following:
   General Standard No. 2: In all matters relating to the assignment, an independence in mental attitude is to be maintained by the auditor or auditors.

plied generally accepted accounting principles ("GAAP"), he knew that both representations were false, Stayner did not check anything, and had done nothing according to GAAS or GAAP.[5] When questioned by the SEC he said:

[T]he position that I had determined that needed to be taken by me in this examination, and that was to report what the company had done. And it was not an engagement to determine the valuation or the judgment of the board of directors.

Stayner considered the intangible asset value of $2.6 million unusually high, and conceded that he was "uncomfortable" with this valuation. However, although the intangibles were almost the entirety of PROS' assets, he did nothing to verify them. He accepted David Lamoreaux's representation that that was what the Board had decided was the intangibles' value,[6] having reviewed the Board of Director's minutes.[7] Stayner did not take the next step, as Standard of Fieldwork No. 3 requires,[8] which would have uncovered the fact that the value assigned by the Board to these assets was, in large measure, based on two contracts, of which one never existed, and the second was about to be cancelled. Obviously, therefore, these values, which Stayner was certifying to the investing public, were grossly overstated and thus materially false and misleading.

Stayner's performance in the PROS audit was not an isolated occurrence. He did auditing and accounting services at Lamoreaux's request for other companies, two of which, Capital Investment Services and Omni Capital Corporation were suspended from trading in 1988 in part because of questions as to the accuracy of publicly disseminated information as to their financial conditions. As to PROS' predecessor company, Ad–Print Corporation, Stayner in December 1986 gave Ad–Print the same certification without qualification for the period 1983 and 1984 as he gave PROS for the period 1985 and 1986, equally without any accounting input whatsoever. He merely accepted the representations of the Board of Directors of Ad–Print.

An accountant who audits a financial statement of a public company has what the Supreme Court has emphasized is a special *"public* responsibility." *United States v. Arthur Young & Co.,* 465 U.S. 805, 817, 104 S.Ct. 1495, 1503, 79 L.Ed.2d 826 (1984) (emphasis in original). In view of the great reliance investors place on financial statements, an auditor's scrutiny of those statements is necessary to "assure[ ] that the integrity of the securities markets will be preserved...." *Id.* at 819, 104 S.Ct. at 1504. A breach of that trust "can inflict great damage on public investors." *Touche Ross & Co. v. S.E.C.,* 609 F.2d 570, 581 (2d Cir.1979). This is so because the system of securities regulation in this country necessarily relies on the auditor's report that the company's financial statements fairly present its financial condition in conformance with established accounting standards.

Against this background, Stayner violated that trust by deliberately and knowingly disregarding the most fundamental precepts of his profession on a number of occasions. Accordingly, I view this as far beyond a merely negligent departure from the standards of ordinary care in the accounting field as the

---

Standard of Fieldwork No. 3: Sufficient competent evidential matter is to be obtained through inspection, observation, inquiries, and confirmations to afford a reasonable basis for an opinion regarding the financial statements under examination.

5. Whatever work papers Stayner may have prepared at the time he issued his letter, the "work papers" he turned over to the SEC were prepared after he had received an SEC subpoena herein and even they confirm that Stayner did no more than accept valuations given him by others.

6. Indeed, Stayner acknowledged that Lamoreaux told him that the $2.6 million figure was the value that PROS' lawyer "needed or wanted to have in the financial statements."

7. [T]he role of an auditor as I perceived it at that time [was] to report what had gone on, that I felt that I needed to report that they had valued it at 2.6. That was their valuation. I didn't feel that I had the expertise to come up with a different valuation.

Q. Who did you consider yourself reporting to?
A. I considered at that point I was reporting to the board of directors and·the shareholders of PROS.

8. *See supra* note 4.

Court below saw it. If not indeed deliberate conduct by Stayner, it was, at a minimum, so reckless as to fully satisfy the scienter requirement of § 10(b) and Rule 10b–5, as noted by us in *Hackbart v. Holmes*, 675 F.2d 1114 (10th Cir.1982) at 1118:

> For purposes of applying Rule 10b–5, the best definition of reckless behavior is conduct that is "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of."

(citations omitted).

See to similar effect, *C.E. Carlson, Inc. v. S.E.C.*, 859 F.2d 1429 (10th Cir.1988) at 1435:

> Proof of scienter may be satisfied by a showing of recklessness, or conduct which falls far short of the standard of ordinary care and which carries a danger of misleading purchasers such that petitioners knew or must have known of its propensity to mislead.

And speaking specifically in this area, in *CL–Alexanders Laing & Cruickshank v. Goldfeld*, 739 F.Supp. 158 (S.D.N.Y.1990) the Court stated at 163:

> [T]o establish scienter through recklessness, it is not enough for plaintiff to establish that the method of preparation for the projections used simply was unreasonable. The "plaintiff must establish that the defendant disseminated the forecasts knowing they were false or that the method of preparation was so egregious as to render their dissemination reckless." (citation omitted). In other words, recklessness connotes defendant's knowledge that it does not have sufficient basis to speak.

Given the foregoing, I view Stayner's recklessness, and consequent scienter, as being clearly established on this record. Since this was hardly an isolated situation, and Stayner remains in the profession,[9] I would reverse and remand to the District Court with directions to award summary judgment to the SEC and thereupon grant the Commission the permanent injunction it seeks enjoining

Stayner from committing future violations of the securities laws. *S.E.C. v. Haswell*, 654 F.2d 698, 699 (10th Cir.1981).

---

9. Having knowingly violated his accountant's duties on at least two if not more occasions, I give his self-serving representations as to the future, little if any weight.