SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

P. Brenden GEBBEN, Defendant.

No. 99–3072.

United States District Court, C.D. Illinois, Springfield Division.

Feb. 15, 2002.

---

4. Under the circumstances, of course, copies of those submissions should also be delivered to Magistrate Judge Ashman.

Robert B. Kaplan, John P. Winsbro, Mark Kreitman, Bridget Moore, Securities & Exchange Commission, Washington, DC, for Plaintiff.

Phillip W. Offill, Krage & Janvey, LLP, Dallas, TX, Wm. F. Trapp, Brown Hay & Stephens, Sringfield, IL, for Wayne F. Gorsek.

Daniel P. Schuering, John E. Kerley, Schuering & Kerley, Springfield, IL, for Lyndell Parks.

Hugh J. Graham, April Troemper, Graham & Graham, Springfield, IL, for P. Brenden Gebben.

## *ORDER*

SCOTT, District Judge.

This matter comes before the Court on the parties' cross motions for judgment as a matter of law. On January 22, 2002, a jury trial began on the liability phase of Plaintiff Securities and Exchange Commission's (SEC) claims against Defendant P. Brenden Gebben. The SEC appeared by its counsel Robert Kaplan, Mark Kreitman, and Bridget Moore. Defendant Gebben appeared personally and by his coun-

sel Hugh Graham III and April Troemper. The SEC alleged that Gebben violated § 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (Claim One of the Complaint); and § 17(b) of the Securities Act of 1933 (Securities Act), 15 U.S.C. § 77q(b) (Claim Two of the Complaint). At the close of all evidence on January 29, 2002, both parties made motions for judgment as a matter of law. For the reasons stated of record at that time and as set forth in this order, the SEC's motion is ALLOWED in part and DENIED in part. Gebben's motion is DENIED.

## STATEMENT OF FACTS

The uncontroverted evidence adduced at trial established that, from December 1994, to September 1996, Gebben worked for a company called Strategic Advisory, Inc., sometimes known as Strategic Investment Advisory, Inc. (SA). SA contracted with corporations (Issuers) to prepare and distribute promotional materials, principally materials called *Profiles* and *Updates* (collectively referred to as Promotional Materials), designed to encourage the purchase of stock issued by the Issuers. SA also promoted Issuer stock through telephone calls, Internet postings, and various broadcast and print media. Issuers paid SA in stock (including warrants or options to purchase stock) and cash for these services. Some Issuers agreed to pay additional stock or other consideration to SA if the market price of the stock rose to a predetermined target price.

The Promotional Materials falsely represented that SA was a research firm that performed independent analyses of the Issuers, and, based on such analyses, made recommendations to buy Issuers' stock and rendered opinions that Issuers' stock should increase in value. In fact, SA did no independent research or analysis of Issuers, but merely edited, or as Gebben put

it, "regurgitated" information provided by the Issuers. Gebben said he was not an analyst and did no analysis. The Promotional Materials did not disclose the type or amount of consideration paid to SA for producing and distributing the materials.

Gebben held several different titles at SA, including Financial Communications, Assistant Director, Research & Communications, and Lead Analyst. The particular title he held at any point in time seems to have been at the whim of SA's president Wayne Gorsek. Gebben performed several duties at SA. He prepared Promotional Materials from materials supplied by Issuers. He said that he did no original writing. He proofread and edited Promotional Materials prepared by others. He mailed and faxed Promotional Materials to brokers and potential investors. He spoke to brokers and investors by telephone about Issuers. He appeared on a radio investment show once to discuss an Issuer's stock. He also performed tasks unrelated to promoting stock, such as unloading delivery trucks, making copies, and running other office equipment. He testified that he pretty much did whatever Gorsek told him to do.

Gebben also made postings to an Internet web site called *Silicon Investor*. The *Silicon Investor* web site allowed members of the web site to discuss a stock. A member could begin a discussion by making an initial posting about a topic, called a thread header. Other persons could then post responses, called replies. Each reply was numbered in the order posted. The thread header and all replies were collectively referred to as a thread. Anyone could view the site including all threads, but only members could post messages.

On June 6, 1996, an investor identified as Bob Lee posted a thread header asking

for comments on a press release.[1] Bob Lee quoted the entire release. The press release stated, in part, "Strategic Advisory Inc. announced today that they have initiated coverage on American BioMed, Inc., (ABMI).... Strategic has instituted a strong buy recommendation with a 12 to 18 months target valuation of $5 to $6 per share...." The end of the quoted press release contained SA's 800 telephone number and listed Brendon Gebben as the contact.[2]

Gebben posted several replies to this ABMI thread. On June 13, 1996, Gebben posted Reply No. 6, addressed to Robert Cartelli. Cartelli had written Reply No. 2 on the thread. Gebben said, in part, "I have been following this little gem for some time. I did have an opportunity to visit their Irvine production facility and speak to some of the executives at the company. With the various product lines and now aggressive marketing I think this one can be a winner...." That same day, Bob Lee, in Reply No. 7, wrote, "Also, I spoke to Brendon Gebben, the analyst assigned by Strategic Advisory, Inc. to research the company.... Brendon indicated that he was preparing a 'glossy 8–10 page research report' on ABMI that will come out next week."

On June 17, 1996, a person identified as Fred McGriff posted Reply No. 11 in which he stated, "ABMI looks like hype to me ...." He then cited problems with the company. An individual identified as Joe Ragan wrote in Reply No. 14, "Fred's assessment of ABMI in post # 11 would seem to be accurate. Would certainly advise reading the companies recent 10K and 10Q filings before jumping on board."

Gebben responded to Ragan on June 18, 1996, in Reply No. 15. Gebben said:

If your looking at the 10k's and 10q's it might also be wise to also look at the S3's and S8's that were filed for the end of May.... It is also prudent to remember that ABMI is a Company that is coming out of the development, R & D phase and into the commercialization process. This being the case the Company does not have scads of cash sitting around. Looking at the core technologies and comparing them to other firms within the same industry segment, it is easy to draw the parallel that ABMI is an undervalued Company especially when factoring in the new management and how they intend to make their cash.

Cartelli then wrote a reply to Gebben, "thanks for the info, appreciate your input. i agree, look at the products, patents, particular market they serve in the growth/earnings stage of the co." Gebben replied the same day to Cartelli, on the web site:

Something to keep the eyes on...I had a conversation with Carry Lieman about ABMI. She is the medical analyst for the Zweig forecast. It would be interesting to see what happens if they bind coverage as well. Have to wait and see if this happens. They do have a large and influential readership. It looks as if the bid-ask will close above $2 today. That would be a nice foundation from which to trend upwards. If the stock could go over $3 for a bit and the net worth requirements are shored up (which I think they will be) we could see this on the NASDAQ full NMS.

On June 19, 1996, Ragan posted a Reply No. 19, addressed to Gebben. Ragan said, "I just can't seem to ascertain much that is positive about this entity." He then listed a few items he called "red flags." Gebben responded the same day in Reply No. 20.

---

1. All materials from Silicon Investor are in Plaintiff's Exhibits 11–13.

2. Gebben's middle name was misspelled, "Brendon."

He started the posting by saying, "If you look under the hood of this vehicle I see these items you listed [Ragan's red flags] as either non negative or positive for the following reasons: . . . ." Gebben then wrote a separate paragraph addressing each red flag. Gebben then said, "These are some of the reasons I believe that an investor who gets in will be well rewarded."

On June 20, 1996, Gebben wrote his final posting on the thread, Reply 24,

> It looks like the stock is sowing good strength today. $2.63 by $2.81 with 740,-000 shares traded. Talked to some market makers and they seem to be on the acquiring side. This is a good sign in my eyes. If anyone wants it i just finished an 8 page research report. Email me a fax number and I will send one to all requesting parties. My e-mail address is *pbgebben@advise.win.net*

Gebben also posted a reply on a thread concerning another SA Issuer, Haber, Inc. On June 13, 1996, Gebben wrote, "Just wanted to respond to you in regards to Haber. I am an analyst and have been following this stock for the past year or so. . . . If anyone has any questions feel free to call me at 800–793–2601 and ask for Brenden Gebben. . Thanks."

SA paid Gebben a salary and bonuses for his services. The bonuses were either in the form of Issuer stock or proceeds from the sale of Issuer stock. The evidence concerning how and when bonuses were paid was somewhat conflicting. Gebben testified that Gorsek at times paid bonuses without any connection to work performed to promote a particular stock. Robert Maple, a contract employee at SA for about four months in 1995, testified that Gebben kept thermometer type graphs of the prices of Issuers' stocks. The graphs showed that bonuses would be paid when particular stocks reached certain target prices. Another SA employee,

Kim Carter Parker testified that at one point SA paid stock bonuses if an Issuer stock stayed at a certain price level for 5 consecutive business days. Later, SA paid a stock bonus to employees any time an Issuer paid SA additional stock.

## ANALYSIS

At the close of evidence, both parties moved for judgment as a matter of law. To be entitled to judgment as a matter of law, the non-moving party must have been fully heard on an issue and there must be no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party on the issue. Fed.R.Civ.P. 50(a)(1). The SEC argues that no jury could find in favor of Gebben on either the § 17(b) claim or on the § 10(b), Rule 10b–5 claim. Gebben argues that he is entitled to judgment.

The Court denies Gebben's Motion in full. The SEC presented ample evidence from which a jury could conclude that he violated both § 17(b) and § 10(b) and Rule 10b–5. Section 17(b) states:

> It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

■ The Promotional Materials clearly constitute circulars or notices contemplated by the statute. Gebben distributed them. The Promotional Materials did not disclose the amount or type of consider-

ation paid to either SA or Gebben. The only question is whether Gebben did so for a consideration received or to be received. There is ample evidence that he received bonuses or knew he could receive bonuses of issuer stock. A jury could conclude that such bonuses were consideration for his distribution of the circulars. Thus, Gebben is not entitled to judgment on this claim. Gebben further is not entitled to judgment on the § 10(b), Rule 10b–5 claim. As explained below, the Court finds that the SEC is entitled to judgment on this claim.

The Court also denies the SEC's request for judgment on the § 17(b) claim. As stated above, § 17(b) requires proof that Gebben distributed the Promotional Materials for a consideration received or to be received. Reading the evidence in the light most favorable to Gebben, a juror could conclude that Gebben's bonuses and other compensation were not tied to distributing the Promotional Materials, but were for other work performed at SA. If so, a juror could conclude that he did not distribute the Promotional Materials for a consideration. The Court therefore finds that there is a sufficient factual issue to allow this claim go to the jury.

The SEC has, however, established as a matter of law that Gebben violated § 10(b) and Rule 10b–5. Section 10(b) states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or the mails, or any facility of a national security exchange ... (b) To use or employ, in connection with the purchase or sale of any security registered on a national security exchange or any security not so registered, or any securities-based swap agreement, ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropri-

ate in the public interest or for the protection of investors.

■ Rule 10b–5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state any material fact necessary in order to make a statement made, in light of the circumstances under which they were made, not misleading, or (c) to engage in any act practice or course of business which operates or would operate as a fraud or deceit upon any person, [all three] in connection with the purchase or sale of any security.

To establish liability under § 10(b) and Rule 10b–5, the SEC must prove: (1) that Gebben made a material misrepresentation or omission; (2) that Gebben made a statement or omission with scienter; and (3) that the conduct occurred in connection with the purchase or sale of a security. *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2nd Cir.1996).

■ The Internet postings quoted above contain misrepresentations and omissions. Gebben clearly gave the impression that he was an analyst following Issuer stocks and that he had arrived at his opinions about the stocks based on his analysis. In the Haber posting he referred to himself as an analyst. Others participating in the ABMI thread postings referred to Gebben as an analyst, and he participated in the thread without commenting on those references. Gebben stated in Reply 24 on the ABMI thread that he had written a research report on ABMI. In Replies 15 and 19, Gebben attempted to refute negative comments about ABMI on the thread by McGriff and Ragan. In these two responses, he restated his positive opinion of

the stock. Gebben, however, was not an analyst and his opinions and recommendations were simply regurgitated Issuer information without any independent analysis.

The misrepresentations in the Internet postings were also material. Materiality is defined as that which "so alters the 'total mix' of information available to the investor that it has the potential to affect the [investment] decision." *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 931 (7th Cir.1988). Gebben's postings certainly affected the mix of information available to those reading the thread. Gebben wrote glowingly and authoritatively about ABMI stock when he knew that: (1) at least some of the participants in the thread believed he was an analyst, and (2) he had no independent basis for his opinions, but was only reciting what ABMI paid SA to say. He responded to Ragan's red flags and McGriff's concerns Gebben in order to refute their negative comments about the stock. These misrepresentations and omissions were material.

Gebben also acted with scienter when he made these postings. Scienter may be shown through reckless conduct. *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1044 (7th Cir.1977). Reckless conduct means a "highly unreasonable" misrepresentation or omission, "involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." 553 F.2d at 1045. Gebben knew that at least some of the participants in the ABMI thread believed that he was an independent analyst. He stated on the Haber thread that he was an analyst. He knew that he was not an analyst. He thus knew that investors reading the threads would wrongly believe that his opinions represented independent research, rather that merely a recitation of what Issuers paid SA to say. Such conduct is so clearly reckless that no reasonable jury could find otherwise.

Finally, the statements in the Internet postings were in connection with the purchase or sale of a security. The "in connection with" requirement only requires that Gebben's actions in some way influence investment decisions. *See S.E.C. vs. Jakubowski*, 150 F.3d 675, 680 (7th Cir. 1998). The Internet postings were on a web site called *Silicon Investor*. *Silicon Investor* was intended to provide information to investors about stocks. In his postings, Gebben represented himself to be an analyst; he made positive recommendations about Issuers' stocks and encouraged readers to buy Issuers' stocks. He also disputed negative comments about Issuer stock. These representations sufficiently influenced investors to establish the "in connection with" requirement. The Court grants the SEC's Rule 50 motion on its § 10(b) and Rule 10b–5 claim.

Therefore, the SEC's oral motion for judgment as a matter of law at the close of all evidence is ALLOWED in part and DENIED in part. The Court enters judgment in favor of SEC and against Defendant P. Brenden Gebben on Claim One of the Complaint. The Court denies the motion as to Claim Two of the Complaint. Defendant P. Brenden Gebben's Motion for Directed Verdict (d/e 200) at the close of all evidence is DENIED. Defendant P. Brenden Gebben's Motion for Directed Verdict on each count at the close of Plaintiff's case (d/e 194) is also DENIED for the reasons stated of record at that time.

IT IS THEREFORE SO ORDERED.