**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 13, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff - Appellee,

v.

JONATHAN CURSHEN,

      Defendant - Appellant.

No. 09-1196
(D.C. No. 03-CV-00636-WDM-KLM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **KELLY**, and **HARTZ**, Circuit Judges.

Defendant-Appellant Jonathan Curshen appeals from the district court's

judgment in favor of Plaintiff-Appellee Securities and Exchange Commission

("the SEC"). In 1999, Mr. Curshen made approximately thirty-five anonymous

Internet postings about a company called Freedom Golf. As a result of these

postings, the SEC brought this civil action against him alleging that he committed

securities fraud by: (1) failing to disclose that he had been compensated for

promoting Freedom Golf, and (2) hyperlinking to an Investor Report on Freedom

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Golf that expressed an overly optimistic view of Freedom Golf's financial future. The district court held a bench trial resulting in findings of fact and conclusions of law in support of a judgment: (1) permanently enjoining Mr. Curshen from violating federal securities laws; (2) barring Mr. Curshen from participating in penny stock offerings; and (3) ordering Mr. Curshen to disgorge $66,235 along with an undetermined amount of prejudgment interest. S.E.C. v. Jones, No. 03-cv-00636-WDM-KLM, 2009 WL 539615, at *7-8 (D. Colo. Mar. 3, 2009). Our jurisdiction arises under 28 U.S.C. § 1292(a)(1), Jackson v. Ft. Stanton Hosp. & Training Sch., 964 F.2d 980, 987 (10th Cir. 1992), and we affirm.

## Background

In November 1999, Timothy Miles and Gaylen Johnson merged two companies. The resulting company, Freedom Golf, became publicly traded in December 1999. Jones, 2009 WL 539615, at *2. In February 2000, Miles contacted Mr. Curshen and Carter Allen Jones about becoming stock promoters for Freedom Golf. Id. Jones agreed to promote the company and was paid with warrants for the purchase of Freedom Golf stock. Id. Based on numbers provided by Johnson, Jones prepared an "Investor Report" for Freedom Golf that projected rapidly increasing revenues with profits of $1.6 million in 2000, $4.5 million in 2001, and $13.5 million in 2002. Id. at *3. Johnson testified that these numbers were realistic but only if an infomercial was produced and marketed. Id. Without

the infomercial, Johnson believed the projections were not realistic.  Id.  In the end, Freedom Golf was unable to raise enough funding to produce the infomercial.  Id.  Regardless, Jones publicly distributed the Investor Report despite being aware of Freedom Golf's poor financial condition and its minimal sale of golf clubs.  Id. at *2.

Mr. Curshen also agreed to promote Freedom Golf.  Id. at *3.  He told Jones that "he had buyers who would follow his recommendation to purchase Freedom Golf stock and drive up the price."  Id. at *3.  He admitted to posting Internet messages under various screen names about Freedom Golf stock, expressly or implicitly urging people to buy it.  Id. at *4.  Approximately thirty-five messages about Freedom Golf were posted under Mr. Curshen's screen names.  See, e.g., 4 Aplt. App. 675, 680, 686, 689, 700, 701, 707, 710, 711, 713, 727, 729, 735, 741, 742, 749, 762, 763, 764, 765, 767, 769, 770, 774, 777, 782, 783, 784, 785, 786, 787, 788).  In one of the postings, Mr. Curshen provided a hyperlink to Jones's Investor Report and stated, "For research on [Freedom Golf], look at the Raging Links section or go here [hyperlink to Investor Report]."  4 Aplt. App. 762.

In April 2003, the SEC brought a civil action alleging that Mr. Curshen's conduct violated 15 U.S.C. § 78j(b) ("§ 10(b)"), 15 U.S.C. § 77q(a) ("§§ 17(a)(1)-(3)"), 15 U.S.C. § 77q(b) ("§ 17(b)"), and 17 C.F.R. § 240.10b-5 ("Rule 10b-5").  The SEC argued that Mr. Curshen's postings contained material

misrepresentations because (1) he had not disclosed that he was not a disinterested observer, but rather was a paid promoter, and (2) he was selling his shares while encouraging the public to purchase the stock. The SEC also posited that Mr. Curshen's hyperlink to the Investor Report, which he knew or should have known was baseless, was also a material misrepresentation. The SEC sought a permanent injunction enjoining Mr. Curshen from violating federal securities laws, a penny stock bar, disgorgement, prejudgment interest, and a civil penalty.

Mr. Curshen disputed, *inter alia*, that he had been compensated for posting the messages, that the messages were false (let alone material), and that he had acted with intent. Furthermore, he argued that the messages were not actionable because they were mere puffery—statements of corporate optimism for the future. The district court found Mr. Curshen's testimony to be "not fully credible" because it was often in direct conflict with other witnesses who had no self-interest in the particular issue. <u>Jones</u>, 2009 WL 539615, at *1.

Relying on a transcript from Miles's deposition, the district court concluded that Mr. Curshen had been compensated for promoting Freedom Golf. <u>Id.</u> at *3. Specifically, Miles testified during his deposition that he had arranged for Mr. Curshen to be compensated with stock. 2 Aplt. App. 421. Miles transferred 125,000 shares of Freedom Golf stock in February and March 2000 to an account in the name of Triparoo, S.A., a Costa Rican entity. 4 Aplt. App. 658, 664; 5 Aplt. App. 1016-1017. The stated beneficiary on the account was Barry

-4-

Ross, although Mr. Curshen placed orders for purchases and sales of Freedom Golf stock despite not having trading authority. 5 Aplt. App. 1014-16, 1018-1021. In addition to the transferred shares, records indicate that Mr. Curshen bought at least another 57,200 shares of Freedom Golf for the Triparoo account for $83,523.13. Jones, 2009 WL 539615, at *3; 4 Aplt. App. 662-670. Over the same time period, Mr. Curshen ordered the sale of at least 158,700 shares of Freedom Golf stock for $211,696.76—a profit of $128,173.63. Jones, 2009 WL 539615, at *3; 4 Aplt. App. 662-671. Mr. Curshen testified that the stock proceeds belonged to Ross and that the payments were repayments for an undocumented loan to Ross. 5 Aplt. App. 1076-78, 1112-14. The district court found that no testimony or other evidence tended to corroborate Mr. Curshen's testimony that the money he received was a loan repayment. Jones, 2009 WL 539615, at *3.

The district court noted that the full extent of Mr. Curshen's benefit from the sale of the Freedom Golf stock was not clear. Id. The funds from the Triparoo account were regularly wired to Surety Bank in the Bahamas. Aplee. Supp. App. 1-4. The listed name on the Surety Bank account was Kahn Noonien Singh Management, LC, but the account had Mr. Curshen's facsimile number on it. 5 Aplt. App. 1025; Aplee. Supp. App. 1-4. After receipt of the funds from the Triparoo account, Surety Bank wired amounts to either Mr. Curshen individually or to Southern Assurance, a privately held company owned and operated by Mr.

-5-

Curshen. Aplee. Supp. App. 1-4. Specifically, on March 9, April 7, and April 20, 2000, Surety Bank was wired $24,990, $29,990, and $14,990 respectively from the Triparoo account. Aplee. Supp. App. 2-3. Southern Assurance also directly received $15,065 on April 28. Aplee. Supp. App. 3. On March 10, 2000, Surety Bank wired $5,040 to Mr. Curshen. Aplee. Supp. App. 2. On March 16, April 13, and April 28, Surety Bank wired $16,065, $30,065, and $15,065 to Southern Assurance. Aplee. Supp. App. 2-3. In total, at least $66,235 of the net proceeds from the sale of Freedom Golf stock were received by Mr. Curshen either directly or through Southern Assurance. Aplee. Supp. App. 1-4.

The district court found that Mr. Curshen's promotional efforts were contemporaneous with his compensation and that his actions and omissions were knowingly made. Jones, 2009 WL 539615, at *4. The court found that his omissions and misrepresentations were material because a reasonable investor would consider it important that an individual promoting a stock was being compensated for his activities and was selling the same stock for his own benefit. Id. at *5. The court also concluded that posting the hyperlink to the Investor Report was a material misstatement because "financial projections are matters a reasonable investor would consider," and Mr. Curshen "knew the dire financial position of Freedom Golf and either knew, or recklessly didn't know, that the published investor report was essentially baseless because there was a 'gross disparity' between Freedom Golf's financial reality and the unrealistic financial

-6-

prediction based upon a non-existent 'infomercial.'" Id. at *5. Ultimately, the district court concluded that Mr. Curshen's conduct violated § 10(b), Rule 10b-5, and § 17(a)(1)-(3). In addition, the court concluded that Mr. Curshen violated § 17(b)'s anti-touting provision by failing to disclose his compensation when posting messages promoting Freedom Golf. Id. at *5.

For relief, the district court granted a permanent injunction and a penny stock bar, and ordered disgorgement in the amount of $66,235. Id. at *7-8. The court retained jurisdiction to determine prejudgment interest and to consider a motion for civil penalty. Id. at *8.

As framed by Mr. Curshen, the merits appeal presents the following issues: (1) whether the district court erred in finding that Mr. Curshen made misrepresentations or omissions for purposes of §§ 10(b) and/or 17(a); (2) whether, even if Mr. Curshen did make misrepresentations or omissions, they were material; (3) whether Mr. Curshen could have possessed the requisite scienter if he made no material misrepresentations or omissions in the first instance; (4) whether Mr. Curshen can be liable under § 17(b) where there was no competent evidence that he received compensation for promoting Freedom Golf's stock; and (5) whether the district court erred in ordering Mr. Curshen to disgorge funds and pay damages. Aplt. Br. 1-2.

-7-

A.     Standard of Review

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." Keys Youth Servs., Inc. v. City of Olathe, 248 F.3d 1267, 1274 (10th Cir. 2001); see also SEC v. Maxxon, Inc., 465 F.3d 1174, 1180 (10th Cir. 2006). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer, 470 U.S. 564, 573-74 (1985) (citations omitted). The same standard "applies equally regardless of whether the district court's factual findings are based on credibility determinations or on documentary evidence." La Resolana Architects, PA v. Reno, Inc., 555 F.3d 1171, 1177 (10th Cir. 2009). "When findings are based on determinations regarding the credibility of witnesses, [Fed. R. Civ. P.] Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson, 470 U.S. at 575 (citation omitted). Whether Mr. Curshen made material misrepresentations and whether he did so with the requisite scienter are both "'fact-specific issues.'" SEC v. Solv-Ex Corp., 101 F. App'x 271, 272-73 (10th Cir. 2004) (citing Schneider v. Vennard,

886 F.2d 1109, 1113 (9th Cir. 1989)).  With respect to evidentiary rulings, a "district court violates the Rules of Evidence only if it abuses its broad discretion—i.e., only if its ruling is based on a clearly erroneous finding of fact or an erroneous conclusion of law or the ruling manifests a clear error in judgment." United States v. Oldbear, 568 F.3d 814, 820 (10th Cir. 2009) (internal quotation marks and citations omitted).  As for the district court's grant of a permanent injunction and order of disgorgement, we review both for abuse of discretion. Prairie Band Potawatomi Nation v. Wagnon, 402 F.3d 1015, 1019 (10th Cir. 2005) (citing SEC v. Pros Int'l, Inc., 994 F.2d 767, 769 (10th Cir. 1993)) (permanent injunction); Maxxon, 465 F.3d at 1179 (disgorgement).

B.      Liability under §§ 17(a)(1)-(3), § 10(b), and Rule 10b-5

To establish a § 10(b) or Rule 10b-5 violation,[1] the SEC must prove that Mr. Curshen made: (1) "a misrepresentation or omission (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, and (5) by virtue of the requisite jurisdictional means."  SEC v. Wolfson, 539 F.3d 1249, 1256 (10th Cir. 2008) (citation omitted).  Section 17(a)(1)-(3) requires substantially similar proof with respect to the offer or sale of securities.  Id.  The

---

[1]  "The scope of Rule 10b-5 is coextensive with the coverage of § 10(b)." SEC v. Zandford, 535 U.S. 813, 816 n.1 (2002); Maxxon, 465 F.3d at 1179 (noting that the elements of a § 10(b) claim and a Rule 10b-5 claim are identical). We therefore use "§ 10(b)" to refer to both the statute and the rule.  See Wolfson, 539 F.3d at 1256 n.11.

primary difference between § 17(a) and § 10(b) lies in the element of scienter.

Section 10(b) and § 17(a)(1) require the SEC to establish scienter, whereas

negligence is sufficient for § 17(a)(2) and § 17(a)(3). Id. at 1256-57 (citing

Aaron v. SEC, 446 U.S. 680, 697 (1980)); Pros Int'l., 994 F.2d at 769.

The focus of the parties' legal debate concerning these elements is whether

there was a misrepresentation and, if so, whether it was material and whether

there was scienter. The district court noted that there was apparently no dispute

that the SEC has proved connectivity and use of jurisdictional means, Jones, 2009

WL 539615, at *4, and these elements are not at issue on appeal.

1. Compensation

Mr. Curshen asserts that the record does not support the district court's

finding that he received compensation for promoting Freedom Golf. Co-

defendant Miles was out of the country and thus unavailable to testify at Mr.

Curshen's bench trial. During an earlier deposition, Miles testified that he

arranged to transfer stock and warrants to Mr. Curshen for promoting Freedom

Golf. 2 Aplt. App. 421. Neither Mr. Curshen nor his counsel attended the

deposition because it took place before Mr. Curshen was joined in the case. 3

Aplt. App. 620. Mr. Curshen argues that the deposition was the only testimony

regarding his alleged involvement with Freedom Golf and that the court abused its

discretion by admitting the transcript. Aplt. Br. 27. Over Mr. Curshen's

objection, the district court ruled that Miles's deposition was admissible under

Federal Rules of Evidence 804(b)(1) and 807.  3 Aplt. App. 620-623.

A statement "not specifically covered by [Federal] Rules [of Evidence] 803 or 804 but having equivalent circumstantial guarantees of trustworthiness" is admissible under Rule 807 if the court determines "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; [] (C) . . . the interests of justice will best be served by admission of the statement into evidence," and (D) the proponent provided notice to the adverse party of its intent to offer such evidence.  Fed. R. Evid. 807. Exercising its discretion, the district court determined that the deposition transcript satisfied each of the elements of Rule 807.  3 Aplt. App. 623 n.1. Although the court did not comment on trustworthiness, Miles's deposition had circumstantial guarantees of trustworthiness as it was taken under oath subject to penalty of perjury.  F.T.C. v. Kuykendall, 312 F.3d 1329, 1343 (10th Cir. 2002), vacated on other grounds, 371 F.3d 745 (10th Cir. 2004) (en banc) (holding that consumer declarations and complaints had circumstantial guarantees of trustworthiness because they were made under oath subject to penalty of perjury). The district court determined that Miles's deposition transcript was offered as evidence of a material fact; notice of intent to offer had been given; the transcript was more probative on points at issue than any other evidence which proponent could procure through reasonable effort; and the interests of justice would best be

-11-

served by admitting the testimony.  3 Aplt. App. 623 n.1.

Mr. Curshen argues that the SEC did not satisfy its burden of demonstrating that Miles's prior testimony was the most probative evidence reasonably available because the district court did not force the SEC to establish that the testimony was unavailable from any other witness or source.  Aplt. Br. 27 (citing United States v. Balfany, 965 F.2d 575, 582 (8th Cir. 1992) (noting that the probative value of the hearsay testimony was "very questionable" and that the "district court could have (and probably should have) required the prosecution to establish that such information was unavailable from any other witness before" admitting the hearsay).  While we do not interpret the "more probative" requirement with "cast iron rigidity," United States v. Harrison, 296 F.3d 994, 1007 (10th Cir. 2002) (internal citation and quotation marks omitted), we have previously upheld the inadmissability of evidence under the residual exception where "no showing as to the probative value of the statement or as to efforts made by defendant to obtain the information from other sources," United States v. Zamora, 784 F.2d 1025, 1031 (10th Cir. 1986).  Here, the district court could properly rule that Miles's deposition was the most probative available evidence with respect to Miles's agreement with Mr. Curshen to promote Freedom Golf for compensation. The district court found that the SEC tried to elicit testimony directly from Mr. Curshen regarding this topic, but he apparently could not recall his conversations with Miles.  3 Aplt. App. 623; see 5 Aplt. App. 980-83, 986, 991-94.

Accordingly, we hold that the district court did not abuse its discretion by admitting Miles's deposition under Rule 807. Because we hold that the deposition was properly admitted under Rule 807, we need not reach the district court's Rule 804(b)(1) analysis. See Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1088 (10th Cir. 2006) (court of appeals may affirm on any ground supported by the record, provided the parties have had an opportunity to address such ground). We further conclude that, given (1) Miles's deposition testimony confirming that he had arranged to compensate Mr. Curshen; (2) the district court's finding that Mr. Curshen's explanation that the money was repayment for a loan to Ross was not credible; and (3) the extensive bank records showing transfer of funds to Mr. Curshen or Mr. Curshen's company, Southern Assurance, the district court did not clearly err in finding that Mr. Curshen had been compensated by Freedom Golf.

2.  Puffery

To satisfy the first element of a 10b-5 claim, the SEC must allege facts showing Mr. Curshen made an untrue statement of material fact, or failed to state a material fact necessary to make the statements that were made not misleading. 17 C.F.R. § 240.10b-5. In applying the materiality element, courts have identified several categories of statements that are not considered materially misleading. Relevant to the case at hand are "[s]tatements classified as 'corporate optimism' or 'mere puffing'"—"typically forward-looking statements, or . . .

-13-

generalized statements of optimism that are not capable of objective verification."

Grossman v. Novell, Inc., 120 F.3d 1112, 1119 (10th Cir. 1997); see also Pirraglia

v. Novell, Inc., 339 F.3d 1182, 1189 (10th Cir. 2003). Examples of puffery

include: the company "'is poised to carry the growth and success of 1991 well

into the future,'" "'significant sales gains should be seen as the year progresses,'"

1992 will "'produce excellent results [for the company],'" and the company will

"maintain a 'high' level of growth." Grossman, 120 F.3d at 1119-20 (collecting

cases).

    As noted by the SEC during oral argument, puffing statements are typically

made by the corporation or someone investors would know is associated with the

corporation. Mr. Curshen agrees that "'[p]rofessional investors, and most

amateur investors as well, know how to devalue the optimism of corporate

executives, who have a personal stake in the future success of the company.'"

Aplt. Br. 40 (quoting In re Verifone Sec. Litig., 784 F. Supp. 1471, 1481 (N.D.

Cal. 1992)) (emphasis added). Circuit courts "'have demonstrated a willingness

to find immaterial as a matter of law a certain kind of rosy affirmation commonly

heard from corporate managers and numbingly familiar to the

marketplace—loosely optimistic statements that are so vague, so lacking in

specificity, or so clearly constituting the opinions of the speaker, that no

reasonable investor could find them important to the total mix of information

available.'" In re Ford Motor Co. Sec. Litig., 381 F.3d 563, 570-71 (6th Cir.

-14-

2004) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1217 (1st Cir.1996));

see id. at 571 ("corporation's self-praise about its business strategy is 'not

considered seriously by the marketplace and investors in assessing a potential

investment'") (internal citation and quotation marks omitted).

Even though a reasonable investor would not have known that Mr. Curshen

was associated with Freedom Golf when he made the Internet postings, Mr.

Curshen argues that all of the postings are unactionable puffery.  Aplt. Br. 39-40;

Aplt. Reply Br. 11-16.  While the district court referred to Mr. Curshen's postings

as "puffing type messages," Jones, 2009 WL 539615, at *4, the court did not

specifically address the materiality of Mr. Curshen's statements.

The messages on the Internet bulletin boards concern whether the stock had

value or was just part of a pump and dump scheme.  We agree that many of Mr.

Curshen's postings are vague, optimistic, unverifiable statements on which no

reasonable investor would rely.  Statements like "Pump up the volume!!," "Get in

now before the fireworks," and "The next big mover. . .," 4 Aplt. App. 680, 707,

788, certainly fall into this category.  However, other postings suggest that Mr.

Curshen has personal knowledge about the company and its plans.  For example,

some postings represent that Mr. Curshen has spoken with the CEO who is

functioning in accordance with some sort of strategic plan: "I have enjoyed

speaking with [the CEO].  He appears to have a good short, medium and long

term plan for the company."  4 Aplt. App. 735.  "According to management there

-15-

are some good things coming on the horizon that should bring life into the stock."

4 Aplt. App. 764. Another posting matter-of-factly states, "I hear some rumblings that some very powerfull [sic] investor relations people are going to get involved here." 4 Aplt. App. 675. Because we believe that a rational trier of fact could look at the entire message exchange and conclude that some statements extend beyond mere corporate optimism, we do not reach whether the puffery exception applies to statements by persons that reasonable investors would not know were associated with the corporation.

### 3. Materiality

There is no liability under § 10(b) for failure to disclose information absent a duty to do so. See Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 174 (1994) (§ 10(b)); SEC v. Cochran, 214 F.3d 1261, 1264 (10th Cir. 2000) (§ 10(b)); Arst v. Stifel, Nicolaus & Co., Inc., 86 F.3d 973, 981 (10th Cir. 1996) (Rule 10b-5). The duty to disclose arises when "'one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'" Cochran, 214 F.3d at 1264 (quoting Chiarella v. United States, 445 U.S. 222, 228 (1980)). However, where a party without a duty elects to disclose material facts, he must speak fully and truthfully, and provide complete and non-misleading information with respect to the subjects on which he undertakes to speak. In re K-Tel Int'l Inc. Sec. Litig., 300 F.3d 881, 898 (8th Cir. 2002) (internal citations omitted). Thus, a voluntary

-16-

statement invokes a duty to disclose only if it is material. "A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock" and if it would have "significantly altered the total mix of information available to current and potential investors." Grossman, 120 F.3d at 1119 (citing and quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)) (internal quotation marks omitted); citing Basic Inc. v. Levinson, 485 U.S. 224, 231-232 (1988)).

Mr. Curshen argues that making anonymous Internet postings does not create a fiduciary or otherwise heightened duty to the public requiring him to disclose that he is being compensated for promoting Freedom Golf. Aplt. Br. 29-30. He further argues that "no reasonable investor under the circumstances present here would consider it important in deciding whether to buy or sell Freedom Golf stock that someone anonymously touting that stock on an Internet bulletin board was paid to do so." Aplt. Br. 43. The SEC counters that failing to disclose the fact that he was being compensated for promoting Freedom Golf stock makes all of his statements per se misleading because a reasonable investor would consider his compensation as bearing on Mr. Curshen's objectivity. Aplee. Br. 33. The district court agreed that a reasonable investor would find important that an individual promoting the sale of a stock was being compensated for his actions and was selling the same stock for his own benefit. Jones, 2009 WL 539615, at *5.

-17-

We agree with the SEC that *some* investors may use the Internet for investment advice and as a means of distilling information about a stock. Aplee. Br. 36. Merely because the posting is anonymous or on the Internet does not mean that the securities laws are inapplicable. As the above messages suggest, Mr. Curshen appears to be vouching for management (or at least relaying information), and the fact that he was compensated as a promoter would be necessary to make the statements not misleading. A reasonable investor would consider the speaker's motivation a significant factor in making an investment decision. Mr. Curshen's failure to disclose that he was being compensated for making material statements is a material omission under these circumstances. See, e.g., Basic, Inc., 485 U.S. at 232.

4.     Scienter

To establish scienter, the SEC must demonstrate: (1) Mr. Curshen knew of the potentially material fact, and (2) Mr. Curshen knew that failure to reveal the potentially material fact would likely mislead investors. City of Philadelphia v. Fleming Cos., 264 F.3d 1245, 1261 (10th Cir. 2001). "The requirement of knowledge in this context may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." Id.

The SEC argues that Mr. Curshen acted with scienter because he knew he

-18-

was being compensated, and he knew, or must have known, that his failure to disclose this information would mislead investors reading his messages. Aplee. Br. 39 (citing SEC v. Gorsek, 225 F. Supp. 2d 921, 927 (C.D. Ill. 2002) (finding scienter because defendant "knew that investors reading the threads would wrongly believe that his opinions represented independent research, rather than merely a recitation of what Issuers paid [him] to say"). Mr. Curshen counters that we need not reach scienter because the messages he posted were not materially misleading. Aplt. Reply Br. 20-21. The district court found that Mr. Curshen acted with knowing intent to manipulate a market for his own benefit or with severe reckless disregard to the investing public. Jones, 2009 WL 539615, at *5. The court also concluded that Mr. Curshen's acts and omissions certainly were negligent in violation of § 17(a)(2) & (3). Id.

We see nothing clearly erroneous about the district court's finding that Mr. Curshen's material omissions were made with the requisite scienter. Once the district court found that Mr. Curshen had been compensated for his promotional activities, there is nothing controversial about drawing the logical conclusion—he knew he was being compensated, and he knew failing to disclose this compensation would mislead those reading his postings by making his opinions seem objective. The district court's conclusion that Mr. Curshen's acts were negligent in violation of § 17(a)(2) & (3) is likewise not clearly erroneous.

To conclude our discussion of §§ 17(a)(1)-(3), § 10(b), and Rule 10b-5, we

find that the district court correctly found that some of Mr. Curshen's Internet postings violated the statutes and Rule 10b-5. While making material statements in Internet postings, Mr. Curshen failed to disclose the important fact that he was being compensated by Freedom Golf for his activities. He also acted with the requisite scienter. Because we affirm the district court's finding of liability under §§ 17(a)(1)-(3), § 10(b), and Rule 10b-5 based on Mr. Curshen's materially misleading postings, we need not reach whether hyperlinking to the Investor Report is actionable under these statutes. See Champagne Metals, 458 F.3d at 1088.

C. Liability under § 17(b)

Section 17(b) makes it unlawful "to publish, give publicity to, or circulate any . . . communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer . . . without fully disclosing the receipt . . . of such consideration and the amount thereof." 15 U.S.C. § 77q(b). The district court held that Mr. Curshen's Internet postings touting Freedom Golf violated § 17(b) because he did not disclose his compensation.

On appeal, Mr. Curshen only challenges the district court's finding that he received compensation, reiterating the evidentiary objections discussed above. Aplt. Br. 54-55; Aplt. Reply Br. 31. Because the district court's finding that Mr. Curshen was compensated is not clearly erroneous, and it is undisputed that he

did not disclose the receipt and amount of such compensation as required by law, United States v. Ware, 577 F.3d 442, 448 (2d Cir. 2009), the district court did not err in finding Mr. Curshen liable under § 17(b).

D.     Sanctions

An injunction based on the violation of securities laws is appropriate if the SEC demonstrates a reasonable and substantial likelihood that Mr. Curshen, if not enjoined, will violate securities laws in the future.  See SEC v. Pros Int'l, Inc., 994 F.2d 767, 769 (10th Cir. 1993).  Determination of the likelihood of future violations requires analysis of several factors, such as (1) the seriousness of the violation; (2) the degree of scienter; (3) whether his occupation will present opportunities for future violations; and (4) whether he has recognized his wrongful conduct and given sincere assurances against future violations.  Id. "Although no single factor is determinative, we have previously held that the degree of scienter 'bears heavily' on the decision."  Id. (quoting SEC v. Haswell, 654 F.2d 698, 699 (10th Cir. 1981)).  "A knowing violation of §§ 10(b) or 17(a)(1) will justify an injunction more readily than a negligent violation of § 17(a)(2) or (3).  However, if there is a sufficient showing that the violation is likely to recur, an injunction may be justified even for a negligent violation of 17(a)(2) or (3)."  Id. (citing Aaron v. SEC, 446 U.S. 680, 700-01 (1980)).

Mr. Curshen argues that there is no evidence that he engaged in the sort of recurrent conduct that would support an injunction and that any wrongdoing

-21-

attributed to him will not re-occur in the future. Aplt. Br. 57. Nonetheless, the district court made specific fact findings supporting its grant of a permanent injunction: Mr. Curshen's concealment of his interest in Freedom Golf stock "was of an egregious nature over a several week period," his "complete failure to disclose his self-interest is strong circumstantial evidence of intentional conduct," and his "giving credence to a fabricated financial report is at best reckless." Jones, 2009 WL 539615, at *6. It also found that Mr. Curshen's "history of being involved with stock promotion and stock trading . . . bespeaks some likelihood of future trading . . . ." Id. It further found that Mr. Curshen did "not recognize any wrong-doing" and "was not a fully credible witness," and it did "not accept [his] assurances against future violations or that there is no likelihood that he will have the opportunity to engage in similar conduct." Id. The district court did not abuse its discretion by granting a permanent injunction.

As for the disgorgement order, "[t]he SEC is entitled to disgorgement upon producing a reasonable approximation of Mr. Curshen's ill-gotten gains." SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004). Mr. Curshen notes that once the SEC has produced such an estimate, "[t]he burden then shifts to [Mr. Curshen] to demonstrate that the Commission's estimate is not a reasonable approximation." Aplt. Br. 58 (citing First City Fin. Corp., 890 F.2d 1215, 1232 (D.C. Cir. 1989)). However, he does not contest the amount of the disgorgement order. Rather, Mr. Curshen argues that disgorgement is not appropriate because he has not violated

the securities laws.  Accordingly, we do not review the amount of disgorgement, although we note that the record suggests that Mr. Curshen received at least $66,235.  Given that Mr. Curshen's conduct violated §§ 17(a)(1)-(3), 17(b), 10(b), and Rule 10b-5, ordering him to disgorge $66,235 was not an abuse of discretion.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge